Carmen M. **RODRIGUEZ–RIOS,**
**et al., Plaintiffs, Appellants,**

v.

**Miguel A. CORDERO, et al.,**
**Defendants, Appellees.**

No. 97–1491.

United States Court of Appeals,
First Circuit.

Heard Nov. 6, 1997.

Decided March 12, 1998.

Carlos Del Valle Cruz for appellants.

Benicio Sanchez–La Costa, with whom Jorge Rodriguez–Micheo, Goldman Antonetti & Cordova, Sigfredo Rodriguez–Isaac, Assistant Attorney General, Department of Justice, Carlos Del Valle–Cruz and Lespier & Munoz Noya were on brief for appellees.

Before TORRUELLA, Chief Judge, CYR, Senior Circuit Judge, and DICLERICO *, District Judge.

CYR, Senior Circuit Judge.

Plaintiff Carmen Rodriguez–Rios, along with her husband and their conjugal partnership, appeal from a district court judgment rejecting her political discrimination claims against various executives and managers employed at the Puerto Rico Electric Power Authority ("PREPA") who demoted Rodriguez, due allegedly to her political affiliation. We vacate the district court judgment and remand for further proceedings.

## I

## BACKGROUND[1]

Plaintiff, a longtime activist in the Popular Democratic Party ("PDP"), served as Executive Secretary to both the Chief of Staff of the Governor of Puerto Rico and the Secretary of State while the PDP held sway in the Commonwealth of Puerto Rico between 1985 and 1990. Plaintiff commenced her employment with the Human Resources Department at PREPA in 1990 and became its

Coordinator of Eligible Personnel Affairs on July 5, 1992.

Shortly after Pedro Rosselló of the opposition New Progressive Party ("NPP") was elected Governor of Puerto Rico on November 4, 1992, he appointed a fellow NPP member, defendant Miguel Cordero, as Executive Director of PREPA. Cordero in turn appointed the other named defendants, all NPP members, to managerial positions in the Human Resources Department.

Following the new NPP appointments, plaintiff was assigned employment duties theretofore performed by persons holding employment classifications well below the M–IV level in which plaintiff continued to be classified. Ultimately, on July 29, 1994, defendant Eckart, the PREPA Personnel Director, formally demoted plaintiff to Confidential Secretary I (M–I level), Warehouse Section, Administrative Services Department, Supplies Division, ostensibly pursuant to a Human Resources Department reorganization orchestrated by defendant Verge under the direction of defendant Cordero.

On March 14, 1995, plaintiff, her husband and their conjugal partnership filed the present action in which plaintiff alleged that defendants had demoted her based solely on her PDP affiliation. See 42 U.S.C. § 1983. For their part, plaintiff's husband and the conjugal partnership invoked the supplemental jurisdiction of the district court, see 28 U.S.C. § 1367(a), and alleged violations of their derivative rights under Puerto Rico law, see P.R. Laws Ann. tit. 31, § 5141, resulting from the alleged political discrimination against plaintiff in violation of P.R. Laws Ann. tit. 29, §§ 136, 140, 146. See Nieves Domenech v. Dymax Corp., 952 F.Supp. 57, 66 (D.P.R.1996); see also Santini Rivera v. Serv Air, Inc., 94 J.T.S. 121 (1994).

The defendants were awarded summary judgment on the ground that the challenged demotion had been effected pursuant to a bona fide reorganization. The commonwealth-law claims brought by the husband and conjugal partnership were dismissed, ap-

---

* Of the District of New Hampshire, sitting by designation.

1. The summary judgment record is related in the light most favorable to the nonmoving party,

Rodriguez. See LaRou v. Ridlon, 98 F.3d 659, 660 n. 1 (1st Cir.1996).

parently due to lack of standing to sue under section 1983.

## II

### DISCUSSION [2]

#### A. Political Discrimination

██ In political discrimination cases, non-policymaking employees have the threshold burden to produce sufficient direct or circumstantial evidence from which a rational jury could find that political affiliation was a substantial or motivating factor behind the adverse employment action. *See LaRou v. Ridlon*, 98 F.3d 659, 661 (1st Cir.1996); *Acevedo–Diaz v. Aponte*, 1 F.3d 62, 66 (1st Cir.1993). At that point the employer must articulate a nondiscriminatory basis for the adverse employment action and *prove by a preponderance of the evidence that it would have been taken without regard to plaintiff's political affiliation. See LaRou*, 98 F.3d at 661; *see also Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977).

██ The plaintiff attested, without evidentiary contradiction, that her PDP affiliation was widely known and that the defendants were prominent members of the opposition NPP. *See, e.g., supra* at p. 23. The district court nevertheless concluded, in reliance on *Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49 (1st Cir.1990), that the politically charged atmosphere at PREPA, without more, did not demonstrate a direct causal link between plaintiff's PDP affiliation and her demotion.[3]

Our affirmance of the district court ruling in *Correa–Martinez* was explained as follows:

The complaint did not say that plaintiff possessed, or expressed, any significant political views; indeed, implicit in plaintiff's arguments is the suggestion that he, himself, scrupulously avoided partisan political involvement.... [*The complaint*]

2. Summary judgment rulings are reviewed *de novo. See LaRou v. Ridlon*, 98 F.3d 659, 661 (1st Cir.1996).

3. The district court relied in particular on the following language in *Correa–Martinez*:

*did not maintain that defendants knew anything about plaintiff's politics or that their motivation related* in the slightest *to plaintiff's exercise of any first amendment* or other constitutionally protected *right. Id.* at 57–58 (emphasis added) (footnote omitted). In contrast, here the plaintiff alleged in her complaint and proffered competent evidence that the defendants were NPP activists who were well aware that she was a prominent PDP activist.

██ Although a highly charged political atmosphere alone cannot support an inference of discriminatory animus, " '[a] highly charged political atmosphere' ..., *coupled with the fact that plaintiffs and defendants are of competing political persuasions, may be probative of discriminatory animus." Acevedo–Diaz*, 1 F.3d at 69 (emphasis added). Thus, unlike in *Correa–Martinez*, but just as noted in *Acevedo–Diaz*, here "[a] jury reasonably could have concluded that [plaintiff] ... [was a] conspicuous target[ ] for political discrimination." *Id.* Therefore, even standing alone such circumstantial evidence "would give us serious pause." *Id.* But there was more.

Viewed in the light most favorable to plaintiff, *see LaRou*, 98 F.3d at 660 n. 1, other evidence adduced by plaintiff established a prima facie case of political discrimination. For example, plaintiff adduced evidence that *every* employment task for which she had been responsible prior to her demotion was performed thereafter by an NPP member and that at least three new recruits to the Human Resources Department were NPP members, whereas there is no evidence that any new recruit was a PDP member. Moreover, the summary judgment record reflects that the putative reorganization witnessed seven PDP-member demotions, with no evidence that any NPP member was either demoted or discharged.

The district court ruled this evidence immaterial, explaining that "this case does not

[A] politically charged atmosphere ..., without more, provide[s] no basis for a reasonable inference that defendants' employment decisions about *plaintiff* were tainted by their disregard of *plaintiff's* first amendment rights. *Correa–Martinez*, 903 F.2d at 58.

directly concern other parties outside those in the caption...." However, as we pointed out in *Nereida–Gonzalez v. Tirado–Delgado*, 990 F.2d 701, 706 (1st Cir.1993), and in *Rodriguez–Pinto v. Tirado–Delgado*, 982 F.2d 34, 40 (1st Cir.1993), given similar evidentiary showings it is for the jury to determine whether the defendants were motivated by a discriminatory animus. Since there can be no serious question that the aforementioned circumstantial evidence, viewed in the light most favorable to plaintiff, established a prima facie case that she had been demoted due to her political affiliation, *see id.*, we now consider the nondiscriminatory motivations relied upon by the defendants.

 The defendants were required to prove by a preponderance of the evidence that their challenged employment actions were prompted by legitimate, nondiscriminatory motives. At this point "the plaintiff-employee will prevail unless the fact finder concludes that the defendant has produced enough evidence to establish that the plaintiff's [demotion] would have occurred in any event for nondiscriminatory reasons." *Acevedo–Diaz*, 1 F.3d at 67.

The defendants ventured that the demotion was due to a bona fide reorganization at PREPA. The district court accepted their contention that the PREPA labor force had become "extremely bloated" and that defendant Verge, who managed the reorganization, had not even known the plaintiff personally. In addition, the court correctly noted that the position formerly held by plaintiff required a bachelor's degree, which she lacked.

Plaintiff responded that the bachelor's degree requirement had been waived for at least one NPP member recruited to the Human Resources Department around the time she was demoted. Further, she pointed out—and defendants do not dispute—that the reorganization relied upon by defendants had not been authorized by the PREPA Governing Board. Although defendant Cordero concedes that no other reorganization plan has ever been undertaken without Governing Board approval, he maintains that the PREPA by-laws did not require that this reorganization receive Governing Board approval. Yet neither Cordero nor any other defendant proffered a copy of the PREPA by-laws or pointed to language in the by-laws supporting this contention.

The district court engaged in impermissible factfinding at this point by concluding that plaintiff's demotion was simply the neutral byproduct of a bona fide reorganization. The evidence revealed that the so-called reorganization, in its entirety, consisted of (i) defendant Cordero's request that defendant Verge evaluate the functions of the Human Resources Directorate in order to determine the need for its various services; (ii) defendant Verge's subsequent recommendations to Cordero as to which services were to be eliminated and the individual employees who were to be demoted or discharged as a result; and (iii) Cordero's subsequent approval of every recommendation made by Verge, without further action or review by any higher authority in PREPA.

Furthermore, even assuming the challenged employment action constituted a "reorganization," its motivation remained very much in question, especially since—unlike all previous reorganization plans at PREPA—it was never reviewed or approved by the Governing Board.[4] Instead, the reorganization

---

**4.** The Reorganization Plan Memorandum, dated July 5, 1994, states in relevant part:

The objective of the Electric Power Authority is to provide efficient, reliable and uninterrupted service to the people of Puerto Rico, at the lowest cost possible....

The Human Resources Directorate has one of the most important roles in the achievement of this objective, since it is responsible for administering the human resources available within the Company. So that this work can be quicker and more effective we have conducted an evaluation of the activities and human resources assigned to this Directorate....

The purpose of the recommendations [presented in the reorganization plan] is to achieve a better utilization of the existing human resources and to increase its productivity pursuant to the laws and regulations applicable to the area of personnel.

These recommendations reduce the intermediate levels of supervision to expedite and make the taking of decisions more effective. [They] also provide[] a simpler organizational structure, which will translate into a greater control of the activities carried out.

The personnel that is [sic] deemed extra, as a result of the reorganization, will be placed in

plan memorandum was simply marked "Confidential and Privileged."

Absent record *evidence* to substantiate the asserted nondiscriminatory motive for bypassing the PREPA Governing Board before proceeding with the "reorganization" plan, a rational factfinder reasonably could infer that defendants' true purpose was political discrimination. *See Woodman v. Haemonetics Corp.,* 51 F.3d 1087, 1092 (1st Cir.1995) ("Where the elements of a sufficient prima facie case combine with the factfinder's belief that the ostensible basis for [demoting an] employee was pretextual, ... the factfinder is permitted to infer ... intentional [political] discrimination....").

Finally, it seems reasonably clear, as the district court observed, that the PREPA labor force was bloated. For example, the NPP report which prompted defendant Cordero to launch the reorganization plan stated:

> The number of employees [at PREPA] has increased alarmingly. As of January 1985 [*i.e.,* when the PDP took over power in Puerto Rico], [PREPA] had 8,472 employees, equivalent to 1 employee for every 125 subscribers. In 1991, the number of employees had increased to 10,616 or 1 employee for every 110 subscribers. This excess of employees imposes an unbearable *burden on the finances* of [PREPA]. (Emphasis added).

Nevertheless, defendants have not explained or demonstrated how the bloating in the 10,000-plus PREPA labor force was addressed by plaintiff's *demotion* and transfer to a different department in PREPA, as distinguished from her *discharge.*

At the very least, therefore, the proffered justification for her demotion lacked *conclusive* force, especially since the defendants point to no record support for an inference that her demotion materially reduced the cost of operating the Human Resources Directorate. Moreover, particularly in light of the uncontested evidence that twenty new recruits were hired by the Human Resources Department during the reorganization, none of whom were shown to have been PDP members, we can discern no rational record basis for concluding that the putative reorganization was motivated by cost savings.

Accordingly, we are unable to agree that the evidence proffered by the defendants *compelled* a finding that plaintiff was demoted for nondiscriminatory reasons, *see Jirau–Bernal v. Agrait,* 37 F.3d 1, 4 (1st Cir.1994) ("Summary judgment [is] warranted ... only if defendants' evidentiary proffer *compel[s]* the finding that political discrimination did not constitute a 'but for' cause for the demotion."), since a reasonable jury certainly could infer that the so-called "reorganization" was a pretext for relegating plaintiff to a less "sensitive" position in PREPA due to her affiliation with the opposition PDP.[5]

## B. *The Commonwealth–Law Claims*

Plaintiff's husband and the conjugal partnership asserted derivative claims under Puerto Rico law, *see Nieves Domenech v. Dymax. Corp.,* 952 F.Supp. 57, 66 (D.P.R. 1996); P.R. Laws Ann. tit. 31, § 5141, which were dismissed because plaintiff's discrimination claims under section 1983 were deemed deficient. Since the section 1983 claims must be reinstated, so must the commonwealth-law claims. *See Rodriguez v. Comas,* 888 F.2d 899, 905 (1st Cir.1989) (holding that federal district court may exercise pendent jurisdiction over state-law claims of § 1983 plaintiff's spouse, provided the claims share a common nucleus of operative fact with the section

---

areas where a need for personnel has been indicated, thereby limiting the recruitment of outside personnel, which will result in additional savings to the Company.

5. Furthermore, the summary judgment record does not support a finding that even one NPP member was demoted or discharged pursuant to the "reorganization" plan. Whereas it plainly reflects that seven PDP-member employees were demoted. Thus, it was error to hold that "[a]ny

... irregularities [in the reorganization process] appear to be subsumed by the resolve to force efficiency into this behemoth public utility," absent an explanation as to why efficiency dictated that the "reorganization" be conducted strictly along *political lines,* a suggestion which is strongly supported by the aforementioned evidence viewed in the light most favorable to Rodriguez–Rios.

1983 claims).[6]

*The district court judgment is vacated and the case is remanded for further proceedings consistent with this opinion. Costs are awarded to appellants.*

SO ORDERED.

**6.** The defendants further contend that they are entitled to assert the so-called "changeover" defense articulated in *Agosto–de–Feliciano v. Aponte–Roque,* 889 F.2d 1209, 1220–221 (1st Cir. 1989) (en banc). There, we recognized that a "changeover in government is ... likely to produce substantial alterations in certain employee's jobs not because those employees are members of the outgoing party but because the incoming party, as a matter of policy, does not view those jobs to be important." *Id.* at 1221. Accordingly, we held that "the factfinder should give some deference to a new government's explanation of how changes made shortly after it assumed power fit into its overall policy objectives." *Id.* The government bears the burden of proof on this issue and the "plaintiff always must be given the opportunity to demonstrate that the government's asserted justification is simply a pretext." *Id.* Among the important hurdles for defendants is a showing that the challenged action was "connected with [their] previously announced goals...." *Id.* at 1221–22.

As the district court did not reach the instant claim, we do not address it at this time.