# United States Court of Appeals

## For the First Circuit

—————————————

No. 99-1193

SANTA PADILLA-GARCIA,

Plaintiff, Appellant,

v.

JOSE GUILLERMO RODRIGUEZ, In his Personal
Capacity and in his Official Capacity as
Mayor of the Municipality of Mayaguez;
MUNICIPALITY OF MAYAGUEZ; REINALDO TORRES;
EDGARDO LUGO, In his Personal Capacity and
in his Official Capacity; Z, Y, W PERSONS,
Who also conspired to discriminate against
plaintiff depriving her of protected rights
for wrongful termination of employment contract,

Defendants, Appellees.

—————————————

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen Consuelo Cerezo, U.S. District Judge]

—————————————

Before

Torruella, Chief Judge,

Wallace,* Senior Circuit Judge,

and Lynch, Circuit Judge.

—————————————

————————————

* Of the Ninth Circuit, sitting by designation.

Francisco R. González for appellant.

Sigfredo Rodríguez-Isaac, Assistant Solicitor General, Department of Justice, with whom Carlos Lugo-Fiol, Solicitor General, and Edda Serrano-Blasini, Deputy Solicitor General, were on brief, for appellees Hon. José Guillermo Rodríguez, Reinaldo Torres and Edgardo Lugo.

Juan Rafael González-Muñoz, with whom González Muñoz & Quiñones Tridas was on brief, for appellees the Municipality of Mayagüez, Hon. José Guillermo Rodríguez, Reinaldo Torres and Edgardo Lugo, in their official capacity.

_____

May 15, 2000
_____

**TORRUELLA, Chief Judge.** This First Amendment case addresses political discrimination within a political party -- specifically, whether direct support for members of a rival faction within a political party is sufficiently political to serve as the basis for a political discrimination claim. The appellant, Santa Padilla-García, worked for the municipality of Mayaguez until she was informed by the new mayor and members of his administration (collectively "the appellees") that her contract would not be renewed. She alleges that the decision not to renew her contract came about because she supported the former mayor and his preferred successor and because she spoke out against the new administration. As a result, she claims that her First Amendment rights were violated because (1) the appellees discriminated against her on the basis of her political beliefs, and (2) they infringed on her freedom of speech.

The district court granted summary judgment for the appellees on both claims. The court concluded that the appellant failed to make a prima facie case of political discrimination because her association with the former mayor was personal, rather than political, in nature. See Padilla-García v. Rodríguez, No. 94-1659, at 15 (D.P.R. Oct. 15, 1998) (opinion and order granting summary judgment) [hereinafter "Opinion"]. Although the constitutionality of political patronage is a complicated and controversial area of jurisprudence in which we normally refrain from taking an expansive view, in this case, we

-3-

construe the Supreme Court's decisions that address political patronage to require a different result than that reached by the district court. By establishing that she was a well-known supporter of the new mayor's rivals within the party and had actively campaigned against him in a hotly contested primary election, the appellant created a dispute of fact as to whether her relationship with the new mayor's factional opponents was a "political" association protected by the First Amendment.

Additionally, the district court erred when it dismissed the appellant's free speech claim because she could not show that her protected expression was "the 'substantial or motivating factor'" in the decision not to renew her contract. Opinion at 21. The proper standard under Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 287 (1977), is whether the protected conduct constitutes a factor in the adverse employment decision.

Based on the facts of this case, viewed in a light most favorable to the appellant, we must reverse the district court's judgment for the reasons discussed below.[1]

I. BACKGROUND

---

[1] Because we reverse the district court's outright dismissal of Padilla-García's claims, we need not reach the issue of municipal liability under Monell v. Department of Social Services of New York, 436 U.S. 658, 694 (1978).

The relevant facts are briefly summarized below in the light most favorable to the plaintiff-appellant. Padilla-García was appointed "Chief of Planning" for the Office of Economic and Community Development ("O.D.E.C.O.") in Mayaguez, Puerto Rico, on June 25, 1991 by then-Mayor Benjamín Cole. She signed a contract specifying that her employment was effective from July 1, 1991 to June 30, 1992 and indicating that her contract was of fixed duration and would only be renewed at the prerogative of the municipality. On July 3, 1992, her appointment was extended to June 30, 1993, subject to the availability of funds for the O.D.E.C.O. program.

In November 1992, José Guillermo Rodríguez was elected mayor. Although Cole and Rodríguez are both members of the Popular Democratic Party ("PDP"), Cole represents a different faction than that of Rodríguez. Padilla-García was commonly associated with Mayor Cole and his administration and well known for participating in the primary campaign against Mayor Rodríguez. Nevertheless, Padilla-García was appointed to be a member of the transition committee, during which time she experienced several incidents of humiliation and harassment which she attributes to her role in the previous administration. She also had a running conflict with the new administration regarding compliance with rules and regulations.

On May 27, 1993, Padilla-García was informed that her employment with the city would not be renewed because her duties would

be subsumed by the new Municipal Planning Office.  She brought this suit on May 13, 1994 against the Municipality of Mayaguez and José Guillermo Rodríguez, Reinaldo Torres, Edgardo Lugo, and Luis Rodríguez-Fernández, in their individual and official capacities, under 42 U.S.C. § 1983.  She alleged a violation of the Due Process Clause of the Fourteenth Amendment, unconstitutional discrimination based on her political beliefs, and an impermissible infringement on her freedom of speech.  The district court entered summary judgment in favor of the defendants on October 15, 1998.  Padilla-García appeals from summary judgment on her First Amendment claims only.

## II.  STANDARD OF REVIEW

Summary judgment is only appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c).  We review the district court's summary judgment de novo, "viewing 'the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor.'" Euromotion, Inc. v. BMW of N. Am., Inc., 136 F.3d 866, 869 (1st Cir. 1998) (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990)); see also Morris v. Government Dev. Bank, 27 F.3d 746, 748 (1st Cir. 1994).

## III.  POLITICAL DISCRIMINATION

It is now well established that political patronage restrains freedom of belief and association, core activities protected by the First Amendment. See Elrod v. Burns, 427 U.S. 347, 354 (1976). In a trilogy of cases, Elrod v. Burns, 427 U.S. at 354; Branti v. Finkel, 445 U.S. 507, 516 (1980); and Rutan v. Republican Party, 497 U.S. 62, 75 (1990), the Supreme Court addressed the constitutionality of political patronage and collectively held that non-policymaking[2] public employees are protected from adverse employment decisions based on their political affiliation. Justice Brennan's opinion in Elrod emphasized the right to associate with the political party of one's choice as a basic constitutional freedom. See Elrod, 427 U.S. at 356. This right flows naturally from the principle that "'debate on public issues should be uninhibited, robust, and wide-open.'" Id. at 357 (quoting New York Times Co. v. Sullivan, 376 U.S. 254, 270 (1964)).

In Mt. Healthy City School District Board of Education v. Doyle, the Court established a two-part burden-shifting analysis for evaluating free speech claims, which has also been applied in the

---

[2] The Court acknowledged that policymaking and confidential employees might justifiably be dismissed on the basis of their political views if the government employer can show that it is "'an appropriate requirement for the effective performance of the public office involved.'" Rutan, 497 U.S. at 70 n.5 (quoting Branti, 445 U.S. at 518). The appellees in this case do not allege that Padilla-García was in a policymaking position or one that would require confidentiality. Instead they argue that her non-renewal was not based on her political views.

-7-

political discrimination context.  See Rodríguez-Ríos v. Cordero, 138 F.3d 22, 24 (1st Cir. 1998); Acevedo-Díaz v. Aponte, 1 F.3d 62, 67 (1st Cir. 1993).  First, the plaintiff must show that she engaged in constitutionally protected conduct, and that this conduct was a substantial or motivating factor for the adverse employment decision. If she does so, then the defendant is given the opportunity to establish that it would have taken the same action regardless of the plaintiff's political beliefs – commonly referred to as the Mt. Healthy defense.  See 429 U.S. at 287.

**A.  Appellant's Prima Facie Case**

The plaintiff's burden under Mt. Healthy goes directly to causation.  To prevail she must point to evidence in the record that would "permit a rational factfinder to conclude that the challenged personnel action occurred and stemmed from a politically based discriminatory animus." Rivera-Cotto v. Rivera, 38 F.3d 611, 614 (1st Cir. 1994); see also Rodríguez-Ríos, 138 F.3d at 24; Vázquez v. López-Rosario, 134 F.3d 28, 36 (1st Cir. 1998).  This showing requires more than merely "juxtaposing a protected characteristic – someone else's politics – with the fact that plaintiff was treated unfairly." Correa-Martínez v. Arrillaga-Beléndez, 903 F.2d 49, 58 (1st Cir. 1990); see, e.g., Rodríguez-Ríos, 138 F.3d at 24 (evidence demonstrating that defendants were politically active and were aware of plaintiff's opposing views).

Thus, there are two components to Padilla-García's prima facie case: 1) that an affiliation with Mayor Cole and the rival primary candidate was a motivating factor for her non-renewal, and 2) that the affiliation was political. The district court granted summary judgment for the appellees on the political discrimination claim because it determined that the appellant's affiliation was not political. The court concluded that "[w]hile it is probable that Padilla has made a showing that she suffered discrimination in the form of the municipality's failure to rehire her," Opinion at 15, she had not shown that the decision "was premised on politics and not simply her personal associations," <u>id.</u> at 17.

The appellant argues that the district court construed the term "political" too narrowly in the context of political discrimination. For the reasons discussed more fully below, we agree.

### 1. Substantial or Motivating Factor

First, we must address appellees' challenge to the sufficiency of the appellant's evidence establishing a causal link between her non-renewal[3] and her affiliations with Mayor Cole and the other primary candidate. After reviewing the record, we agree with the

---

[3] It is settled law that the <u>Elrod-Branti</u> doctrine extends to a politically motivated non-renewal of a term of employment, regardless of the transitory nature of the position. <u>See</u> <u>Nieves-Villanueva</u> v. <u>Soto-Rivera</u>, 133 F.3d 92, 94 n.3, 98 (1st Cir. 1997) (citing <u>Cheveras Pacheco</u> v. <u>Rivera-González</u>, 809 F.2d 125 (1st Cir. 1987)); <u>Figueroa</u> v. <u>Aponte-Roque</u>, 864 F.2d 947, 951 (1st Cir. 1989) (citing same).

district court that a factfinder could reasonably infer from the evidence that Padilla-García's affiliation with another faction within PDP was a "significant" or "motivating" factor in her non-renewal.

It was well known that Padilla-García was tied to the Cole administration and that she had campaigned in the primary election against Mayor Rodríguez. Moreover, the record shows that "the primary election left serious conflict between the two defined groups within the same political party." Opinion at 4. This circumstantial evidence that the appellant was a "conspicuous target[]" could alone create an issue of fact on discriminatory animus. See Acevedo-Díaz, 1 F.3d at 69 (recognizing that highly charged political atmosphere "coupled with fact that plaintiffs and defendants are of competing political persuasions" may be probative of discriminatory animus). However, it is further supported by the testimony of the appellant and witnesses Norma I. Soler-Echandy, Pedro Bisbal-Ramos, and Sixto Negrón-Hernández, which reveal that from the beginning Padilla-García was targeted for humiliation and harassment by the appellees because Mayor Rodríguez perceived her as a political threat.[4]

---

[4] Because we limit our review to the record as it stood before the district court at the time of its ruling, see J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc., 76 F.3d 1245, 1250 (1st Cir. 1996) (citing Voutour v. Vitale, 761 F.2d 812, 817 (1st Cir. 1985)), we will not consider the declaration of Padilla-García submitted to the district court as part of the Motion for Reconsideration.

## 2. Political Nature

The appellant proffers two constitutionally protected associations that served as sources for the alleged political discrimination: (1) Padilla-García's affiliation with former Mayor Cole and his administration, and (2) her support for Mayor Rodríguez's opponent in the primary election. The appellees argue that the evidence clearly establishes that her affiliations had nothing to do with politics, and the appellant concedes that there is no direct evidence in the record that differing political philosophies was her motivation for supporting members of the rival PDP faction. However, as the appellant suggests, Padilla-García's relationships with Mayor Cole and his preferred successor are so suggestive of political connotations that they inherently create an issue of fact as to whether they are protected by the First Amendment.[5] In a different context, merely producing evidence of affiliation with a political faction might not be sufficient to withstand summary judgment; however, the record here shows that Padilla-García was not just affiliated with the rival faction -- she was clearly identified as a close ally of the former

---

[5] We recognize that Padilla-García's relationship with the Cole administration may be more susceptible to attack as a personal affiliation than her role in the primary election. However, because both activities are intimately related to the factions within the PDP, which implicate the same core concern of expression of political beliefs, we do not find it necessary to separate the analysis into two distinct questions for summary judgment.

mayor and actively campaigned against the new mayor.  Support for a political candidate -- whether as an official in his administration or a behind-the-scenes member of his campaign -- is an example of an association that inevitably implicates the "right 'to engage in association for the advancement of beliefs and ideas.'"  Correa-Martínez, 903 F.2d at 57 (quoting NAACP v. Button, 371 U.S. 415, 429-30 (1963)).  Padilla-García's reason for the association – her motivation for supporting Mayor Cole and the primary candidate – is purely a question of fact for the jury.

Nor is the association's constitutionally protected status altered by the fact that Mayor Rodríguez is a member of the same party as the candidates that Padilla-García chose to support.  Clearly factions within one party can represent different political philosophies.  Thus, the underlying principle, freedom to express political beliefs, is very much still at stake.  In a case such as this one, where there is a heated battle during the primary, the risk of retaliation against an employee who supported the opposition is just as high as in any other election.[6]

---

[6]  This is not an entirely new understanding of the Elrod-Branti doctrine.  See Vázquez, 134 F.3d at 32 (applying political discrimination analysis to facts arising from primary election); LaRou v. Ridlon, 98 F.3d 659, 661-62 (1st Cir. 1996) (same); Rodríguez-Rodríguez v. Muñoz Muñoz, 808 F.2d 138, 140-43 (1st Cir. 1986) (considering applicability to intra-party conflicts).  And this view is shared by other courts that have considered the patronage doctrine in the context of primary elections.  See Robertson v. Fiore, 62 F.3d 596,

Finally, we see no discrepancy between our conclusion today and our decisions that place the burden of proof on the plaintiff to demonstrate that her association was political and not personal. See 903 F.2d at 56-58. In Correa-Martínez, there was nothing inherently political about the plaintiff's relationship with the former administrative judge, and the complaint

> contained no facts regarding the political contours, if any, of Correa's relationship with Judge Padilla. It contained no facts capable of supporting an inference that the relationship came within the constitutional orbit. It did not maintain that defendants knew anything about plaintiff's politics or that their motivation related in the slightest to plaintiff's exercise of any first amendment or other constitutionally protected right.

---

600 (3d Cir. 1995) ("The danger that employees will abandon the expression or exercise of their political beliefs to appease their supervisors is not diminished because a supervisor supports a different identifiable faction within a party as compared to a different party altogether."); Tomczak v. City of Chicago, 765 F.2d 633, 640 (7th Cir. 1985) ("[Branti's] reasoning applies with equal force to patronage dismissals when one faction of a party replaces another faction of the same party, especially in election districts where a primary victory within the dominant party virtually assures victory in the subsequent general election." (citation omitted)); Barnes v. Bosley, 745 F.2d 501, 506 & n.2 (8th Cir. 1984) (agreeing with district court that political motives prompted dismissal even though members of same party); McBee v. Jim Hogg County, 703 F.2d 834, 838 n.1 (5th Cir. 1983) (concluding that Elrod-Branti rationale applies when employment decisions are based upon support and loyalty to individual politician as well as a political party because Supreme Court's disapproval of political patronage extends beyond "opposing political party situations"); see also Joyner v. Lancaster, 553 F. Supp. 809, 817-18 (M.D.N.C. 1982) (applying political discrimination analysis to case involving fallout from primary election); Ecker v. Cohalan, 542 F. Supp. 896, 898-901 (E.D.N.Y. 1982) (same).

-13-

Id. at 57-58 (footnote omitted).  Likewise, in LaRou v. Ridlon, the

evidence was indisputable that the plaintiff's relationship with

Sergeant Muse was not political at the point of his termination – LaRou

admitted that he was not even aware that Muse intended to run against

Sheriff Ridlon for the Democratic nomination for sheriff.  See LaRou,

98 F.3d at 660, 662.   In contrast, Padilla-García's targeted

association – with another faction within the same political party,

with a former administration, and with a political opponent's campaign

– has on its face everything to do with politics.[7]

Vázquez v. López-Rosario raises a related yet significantly

different issue.  See 134 F.3d at 36.  The question before us there was

not whether Vázquez's affiliation with the rival primary candidate was

political, but rather whether he had introduced sufficient evidence

that the affiliation was a motivating factor in his termination -- the

other element of the plaintiff's prima facie case.  See id.  We

determined that he was missing the causal link between his political

affiliation and the adverse employment action; his "'unsupported and

speculative assertions regarding political discrimination'" were

---

[7]  We note that the complaint states that she "was not related to
partisan politics," Complaint ¶ 6, but drawing all inferences in favor
of the nonmovant, she may have been referring to her work history as a
non-elected administrative employee, her recent introduction to Puerto
Rico politics, and her lack of party membership.

insufficient to survive summary judgment. Id. (quoting LaRou, 98 F.3d at 661).

As we discussed above, we agree with the district court that Padilla-García has met this threshold by establishing a direct causal link between her association with, and campaign for, a rival faction of the PDP and her non-renewal. See Rodríguez-Ríos, 138 F.3d at 24 (citing Acevedo-Díaz, 1 F.3d at 69). While it is possible that her relationships may not ultimately prove to have been based on political ideas and beliefs, the appellant has made a prima facie case, and the appellees are free to dispute her allegations at trial.

### B. Appellees' Mt. Healthy Defense

The appellees argue that we can still affirm the district court's grant of summary judgment on the alternative ground that they established by a preponderance of the evidence that they would have taken the same action regardless of the appellant's political affiliation because they were reorganizing her department. See Rodríguez-Ríos, 138 F.3d at 24; Acevedo-Díaz, 1 F.3d at 66. The reorganization included the creation of a new Municipal Planning Office – one of Mayor Rodríguez's campaign goals – that incorporated the duties performed by Padilla-García as Chief of Planning in the Housing Department.

In a political discrimination case, the plaintiff may discredit the proffered nondiscriminatory reason, either

circumstantially or directly, by adducing evidence that discrimination was more likely than not a motivating factor.  See Rodríguez-Ríos, 138 F.3d at 26; Acevedo-Díaz, 122 F.3d at 69; see also Stephens v. Kerrigan, 122 F.3d 171, 181 (3d Cir. 1997).  In this way, the burden-shifting mechanism is significantly different from the device used in other employment discrimination contexts, such as Title VII cases, where a plaintiff is required to come forward with affirmative evidence that the defendant's nondiscriminatory reason is pretextual.[8]  See Acevedo-Díaz, 1 F.3d at 67; see also Stephens, 122 F.3d at 176 (explaining the distinction between political discrimination and Title VII employment discrimination).  In a political discrimination case, the defendant bears the burden of persuading the factfinder that its reason is credible.  The evidence by which the plaintiff established her prima facie case may suffice for a factfinder to infer that the defendant's reason is pretextual and to effectively check summary

---

[8] Under Title VII, once the plaintiff establishes a prima facie case of discrimination, only a limited burden of production passes to the employer to articulate a legitimate, nondiscriminatory reason for its actions.  See Acevedo-Díaz, 1 F.3d at 67.  The employer under Title VII need not submit sufficient evidence to persuade the factfinder because the plaintiff retains the burden of persuasion at all times.  See id. (citing Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981)).  In contrast, under the Mt. Healthy analysis for political discrimination, the burden of persuasion passes to the defendant-employer once the plaintiff produces sufficient evidence of her prima facie case.  See id.  In other words, "the plaintiff-employee will prevail unless the fact finder concludes that the defendant has produced enough evidence to establish that the plaintiff's dismissal would have occurred in any event for nondiscriminatory reasons."  Id.

judgment.  See Rodríguez-Ríos, 138 F.3d at 26 ("Where the elements of a sufficient prima facie case combine with the factfinder's belief that the ostensible basis for [demoting an] employee was pretextual, . . . the factfinder is permitted to infer . . . intentional [political] discrimination . . . ." (quoting Woodman v. Haemonetics Corp., 51 F.3d 1087, 1092 (1st Cir. 1995))); Acevedo-Díaz, 1 F.3d at 69-70 (considering circumstantial evidence that some plaintiffs were "conspicuous targets" for political discrimination as sufficient evidence of pretext).

Although it is clear that the municipal restructuring was a campaign promise, and thus was not entirely concocted to explain Padilla-García's employment non-renewal, there is not enough information in the record about the restructuring to foreclose the possibility that it was in fact used as a discriminatory tool for the non-renewal.  For instance, the record to which appellees point does not show that others in municipal government were also terminated as a result of the restructuring.  With nothing more from the appellees than the mere averment that the appellant's position was eliminated due to the reorganization, we remain unconvinced that they are entitled to judgment as a matter of law based on the Mt. Healthy defense.  Although we are not bound by the district court's determination, we are in agreement that the appellees' argument is not "particularly

-17-

persuasive," especially in light of the counter-evidence suggesting that politics played a role in the non-renewal.

## IV.  FREEDOM OF SPEECH

We now turn to Padilla-García's allegation that the non-renewal of her position was based on her outspoken criticism of the Rodríguez administration for the unlawful activity of its officers. One confrontation related to appellee Torres' use of a government vehicle for personal needs.  On another occasion the appellant spoke out against the appellees' practice of violating regulations by not publicly announcing new projects developed by the municipality and their respective budget allotments.  She expressed her belief that this was a deliberate effort on the part of Mayor Rodríguez to avoid public comment.  For purposes of summary judgment, the appellees do not dispute that the appellant often expressed her belief that the administration was not acting in accordance with the law.

The district court properly employed a three-part test to evaluate the appellant's First Amendment free speech claim:  1) whether she was speaking on matters of public concern; 2) whether her and the public's interest in free discourse on those matters outweighed the countervailing governmental interest in promoting efficient performance of public service; and 3) whether her protected expression was a motivating or substantial factor in the mayor's decision not to renew her contract.  See Tang v. Rhode Island Dep't of Elderly Affairs, 163

F.3d 7, 12 (1st Cir. 1998) (citing Pickering v. Board of Educ., 391 U.S. 563, 568 (1968)); O'Connor v. Steeves, 994 F.2d 905, 912 (1st Cir. 1993). Again, the appellees have the opportunity to make a Mt. Healthy defense. See O'Connor, 994 F.2d at 912 (citing Mt. Healthy, 429 U.S. at 287).

The court concluded that the plaintiff could satisfy the first two prongs, but granted summary judgment because she could not establish a causal link between her protected speech and her non-renewal. As the court was adequately convinced that her non-renewal was based on her close association with Mayor Rodríguez's political opponents, it reasoned that "Padilla's protected speech was not the motivating factor behind her non-renewal." Opinion at 21 (emphasis added). Because the district court erred in applying the third prong, we reverse.

The plaintiff is only required to show that her "protected expression was a substantial or motivating factor in an adverse employment action." Tang, 163 F.3d at 12. The fact that her political affiliations may also have been a factor does not preclude the possibility that her repeated criticism of the administration also contributed to her non-renewal. The appellant has submitted sufficient evidence to create a dispute of fact as to whether her interactions with the appellees over personal use of government vehicles and publication of project proposals resulted in discriminatory treatment

-19-

and eventually the elimination of her position.  And as we discussed above, we are not persuaded by the appellees' claim that Padilla-García's non-renewal was the inevitable result of governmental reorganization.

Relying on Flynn v. City of Boston, 140 F.3d 42 (1st Cir.), cert. denied, 119 S. Ct. 403 (1998), the appellees additionally argue that we should affirm on the alternate ground that Padilla-García's expression was not a matter of public concern but consisted merely of statements made "as part of the duties of her position as a policy level official who disagreed with her superiors on a number of issues." Brief for Appellees José Guillermo Rodríguez, Reinaldo Torres, and Edgardo Lugo, at 15 (citing Flynn, 140 F.3d at 46).  However, the appellees misread Flynn.

In Flynn, we assumed that the plaintiff's statements were matters of public concern.  See Flynn, 140 F.3d at 46-47.  Accordingly, our decision turned on the second prong of the test.  We held that Flynn's interest in free speech, and the public's, were outweighed by the government's interest in promoting efficiency of its services, specifically "the effect of the statements on those 'close working relationships for which personal loyalty and confidence are necessary. . . .'"  Id. at 47 (quoting Rankin v. McPherson, 483 U.S. 378, 388 (1987)).  Our holding was explicitly limited to policymakers – which in Flynn's case were highly placed members of the mayor's administration

– who were also "subject to discharge for political reasons under the Elrod and Branti cases." Id.

Here, it is fatal to the appellees' position that they did not argue before the district court that Padilla-García's political discrimination claim should fail because she was a policymaking or confidential official subject to termination for her political views under the Elrod/Branti exception. See supra note 1. Consequently, they cannot now claim that a conflict with her in the policymaking arena impairs their administration. See Flynn, 140 F.3d at 47 ("[T]he situation would be different if a clerical worker, in a non-disruptive and otherwise proper manner, disagreed about how the agency was doing its job. If the employee were not at a policy level, it might be hard to see why such criticism would be pertinent to retention.").

From our independent examination of the content, form, and context of Padilla-García's speech, see Connick, 461 U.S. at 147-48; Tang, 163 F.3d at 12; O'Connor, 994 F.2d at 914, we infer for purposes of summary judgment that she spoke on a matter of public concern, as opposed to a matter of personal interest. As the district court recognized, "Padilla's revelations seem to implicate a topic of inherent concern to the community and her comments appear to have had a direct bearing on the legality of the municipality's administration of federally funded programs." Opinion at 19; see O'Connor, 994 F.2d at 915 (viewing official misconduct as topic of inherent concern to the

-21-

community).  Padilla-García's comments relating to regulatory compliance are easily distinguishable from self-serving statements that promote a personal interest.  See Connick, 461 U.S. at 141, 147-48; Tang, 163 F.3d at 12.

## V. CONCLUSION

Our opinion today does not expand upon the First Amendment protection afforded to government employees that are targeted by a new political administration. Supporting a political party is an inherently political activity. It is only a logical application of <u>Mt. Healthy</u> that once Padilla-García adduced sufficient facts from which one could infer that her close ties to a faction within the PDP was a factor in the non-renewal of her contract, she created a trialworthy issue of whether she engaged in constitutionally protected conduct. Because we cannot conclude that her position would nevertheless have been eliminated based on the reorganization of the municipal government, we have no choice but to reverse summary judgment. For similar reasons, we are unable to determine that the appellant's political speech was not a motivating factor in her non-renewal.

**Reversed and remanded** for proceedings consistent with this opinion.

-23-