# United States Court of Appeals

## For the First Circuit

Nos. 04-2292, 04-2293

DORCAS ROSARIO-URDAZ,

Plaintiff, Appellant/Cross-Appellee,

v.

ROMÁN VELAZCO, SECRETARY OF THE DEPARTMENT OF LABOR
AND HUMAN RESOURCES OF PUERTO RICO; VÍCTOR RIVERA-HERNÁNDEZ.

Defendants, Appellees/Cross-Appellants.

CARMEN ROSARIO-MORALES; MAIRA GONZÁLEZ; ANGEL AGOSTO,

Defendants, Appellees.

_____

JANE DOE; CONJUGAL PARTNERSHIP RIVERA-DOE,

Defendants.

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Salvador E. Casellas, U.S. District Judge]

Before

Boudin, Chief Judge,

Lynch, Circuit Judge,

and Schwarzer,* Senior District Judge.

---

*Of the Northern District of California, sitting by designation.

Víctor P. Miranda-Corrada with whom Roberto Busó-Aboy was on brief for plaintiff, appellant/cross-appellee.

Celina Romany with whom Celina Romany Law Offices was on brief for defendants, appellees/cross-appellants.

Doraliz E. Ortiz-de-León, Assistant Solicitor General, Commonwealth of Puerto Rico, Office of the Solicitor General, Department of Justice, with whom Salvador Antonetti-Stutts, Solicitor General of Puerto Rico, and Mariana D. Negrón-Vargas, Deputy Solicitor General, were on brief for defendants, appellees.

---

January 6, 2006

---

**BOUDIN**, <u>Chief Judge</u>.  The background to this litigation under section 1983 is easily recounted.  In 1996, Dorcas Rosario-Urdaz ("Rosario-Urdaz") began work as an employee with the rank of Employee I in the Puerto Rico Department of Labor and Human Resources ("DLHR").  She earned career status as an Information Representative and was rather quickly promoted to a "trust" (<u>i.e.</u>, political) position in 1997.  At that time, the governorship was held by the New Progressive Party ("NPP") with which Rosario-Urdaz is associated.

In November 2000, a new governor was elected representing the Popular Democratic Party ("PDP").  As permitted by Puerto Rico law, 3 P.R. Laws Ann. § 1350(8)(a) (2000), Rosario-Urdaz then exercised her option to resume her earlier status as a career employee effective December 29, 2000, shortly before the new administration took power in January 2001.  When the new governor took office, she appointed, as Secretary of the DLHR, Victor Rivera-Hernandez, who was later succeeded by Roman Velazco.  In the new administration, Carmen Rosario-Morales was Assistant Secretary for Human Resources; she was later replaced by Gladys Rivera.

According to Rosario-Urdaz, she was made a target of harassment after the new PDP administration came to power.  She said that her duties were reduced and given at least in part to a former subordinate, Maira Gonzalez, a member of the PDP; that she was harassed by Gonzalez and by another co-worker, Angel Agosto;

-3-

and that her entire office was abolished in October 2001. Although Rosario-Urdaz was initially given an equivalent job in another part of the DLHR, she was discharged in March 2002.

The discharge, which is a central issue in the present appeal, occurred after an audit in 2001 studied transfers within the department that had occurred during a so-called freeze period surrounding the 2000 election. The audit was conducted under the supervision of Gladys Rivera and it concluded, as to Rosario-Urdaz, that there were irregularities in her original 1996 appointment to the career position of Information Representative that rendered the appointment a nullity. Gladys Rivera's report led to Rosario-Urdaz' discharge by Rivera-Hernandez.

Following the discharge, Rosario-Urdaz brought the present suit in April 2002. Along with claims under Puerto Rico law, the complaint asserted a federal claim under 42 U.S.C. § 1983 (2000), based on two different theories: first, that the alleged harassment and the discharge were politically motivated in violation of Rosario-Urdaz' first amendment rights, and second, that her discharge without a prior hearing violated fifth amendment due process rights, given that her career position is a protected property right.

The defendants named in the suit were Rivera-Hernandez, Rosario-Morales, Gonzalez and Agosto; Velazco, who succeeded Rivera-Hernandez as secretary of the DLHR, was later added for

purposes of reinstatement relief. Gladys Rivera was not named as a defendant. Rosario-Urdaz sought huge damages against all four in their personal capacity (official-capacity damage claims were made but are barred) and reinstatement as Information Representative. She requested a preliminary injunction to restore her to her position pendente lite; this was denied by the district court but this court vacated and remanded the matter for further proceedings. Rosario-Urdaz v. Rivera-Hernandez, 350 F.3d 219 (1st Cir. 2003).

In June 2004, the district court granted pending motions to dismiss the personal capacity damage claims against all defendants based on qualified immunity. On June 21, 2004, the court held a bench trial on the request for reinstatement, which it granted on the ground that termination without a prior hearing was impermissible because the department had not shown that Rosario-Urdaz' career appointment was void. In August 2004, the district court issued a final judgment.

These cross appeals followed: Rosario-Urdaz to contest the dismissal of her damage claims and the secretary to contest her reinstatement. On the former, resolved on summary judgment, our review is plenary, Carmona v. Toledo, 215 F.3d 124, 131 (1st Cir. 2000); on the latter, which followed a bench trial, fact-findings are reviewed for clear error and legal determinations de novo save that some deference may be shown to rulings that effectively apply abstract rules to specific events. Fed. R. Civ. P. 52(a); 9A

Wright & Miller, Federal Practice & Procedure: Civil 2d § 2588 at 600-08 (1995).

We begin with Rosario-Urdaz' damage claims against the defendants, which the district court dismissed based on qualified immunity. The underlying substantive law protects government employees from adverse action or harassment against them motivated by hostility to their political views or affiliation. Padilla-Garcia v. Guillermo Rodriguez, 212 F.3d 69, 74 (1st Cir. 2000). Defendants did not assert that Rosario-Urdaz held a position for which her political opinions could be treated as pertinent; instead, they denied any violation and, in the alternative, said that qualified immunity protected them.

We may affirm the district court's dismissal if the claims fail on their merits at the summary judgment stage or if, on this record, qualified immunity has been made out. Indeed, the two inquiries now overlap in part due to the Supreme Court's direction in Saucier v. Katz, 533 U.S. 194, 201 (2001), that qualified immunity determinations begin with an inquiry into whether the right asserted exists at all in relation to the facts. The individual defendants are charged with distinct acts performed by each and, in addition, with a joint and general effort to drive Rosario-Urdaz from her post.

Rosario-Urdaz was deprived of her position by a single act--Rivera-Hernandez' decision to terminate her employment on the

professed ground that her original career appointment as Information Representative was flawed in its inception. Rosario-Urdaz asserts that Rivera-Hernandez was wrongfully motivated by her party affiliation; if so, he would presumptively be liable, Padilla-Garcia, 212 F.3d at 74--subject to qualified immunity or other possible defenses, see, e.g., Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977).

There is no evidence that Rivera-Hernandez' action was politically motivated. He received a report, resulting from Gladys Rivera's audit, colorably asserting that Rosario-Urdaz was holding a career position to which she was not entitled. He has denied a political motive; in his deposition, he identified others who were terminated as a result of the audit. Rosario-Urdaz has pointed to nothing to show political motivation on Rivera-Hernandez' part.

If anything, Rosario-Urdaz' brief on this issue tends more to undercut her position than to support it. In a short mustering of "evidence" against Rivera-Hernandez, the brief says he "admitted" considering Rosario-Urdaz' party membership; so he did, saying that it made him hesitate (i.e., in her favor) when confronted with the recommendation against her. The brief also conjures up an imaginary conflict between Rivera-Hernandez' statements that he questioned Gladys Rivera actively as to the

-7-

recommendation and his eventual reliance on the audit recommendation.

There are four charges against Rosario-Morales: that she deprived Rosario-Urdaz of prior duties, assigned Gonzalez to the same office with some of those duties, transferred all of the personnel of Rosario-Urdaz' then-existing office incident to its closing, and ordered an _earlier_ audit of personnel transactions occurring in August 2000--just before the pre-election freeze became effective. The earlier audit had no effect on Rosario-Urdaz;[1] the other three charges pose the only issue of general importance in this case.

Rosario-Urdaz does not claim that Rosario-Morales is responsible for her termination; this occurred as a result of actions taken by Gladys Rivera and Rivera-Hernandez _after_ Rosario-Morales left the department at the end of 2001. Instead, the three incidents involve reassignments of duties and of personnel to different offices. None of these changes resulted in Rosario-Urdaz' discharge or reduction in salary. Two of them, perhaps all three depending on what duties Rosario-Urdaz retained, are commonplace personnel decisions likely to be shielded by qualified immunity _if_ objective reasonableness overcomes imputed motive.

---

[1]Rosario-Urdaz was apparently transferred back to career status during the freeze period itself--how is unexplained--and the audit in question is not the one later conducted by Gladys Rivera that led to Rosario-Urdaz' ultimate termination for reasons having nothing to do with the freeze.

This is the rub. Traditionally--search and seizure is the best example--the Supreme Court has said that private motive is irrelevant if the defendant had objective probable cause or, for qualified immunity purposes, a reasonable officer might have so believed, even if wrongly. Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982). By contrast, in cases involving first amendment rights, some of our decisions have left open the possibility that an objectively reasonable action could still be denied qualified immunity if improperly motivated. See Mihos v. Swift, 358 F.3d 91, 103-07 (1st Cir. 2004); Tang v. Rhode Island, 120 F.3d 325, 327 (1st Cir. 1997).[2]

In all events, even if the existence of a political motivation underlying an objectively reasonable employment decision were enough to preclude qualified immunity, Rosario-Urdaz must make a threshold showing that she was adversely affected by these personnel decisions. Padilla-Garcia, 212 F.3d at 74. Employment actions short of outright dismissal or demotion are redressable if improperly motivated, Rutan v. Republican Party of Ill., 497 U.S. 62, 75-76 (1990), but only if the employment action resulted in conditions "unreasonably inferior" to the norm for that position,

---

[2]These cases note, without resolving, the tension between specific-intent constitutional violations and the requirement that qualified immunity be decided on a purely objective basis. Tang expressed the hope that the Supreme Court would shed light on this question, 120 F.3d at 328; in the event, it did not. See Crawford-El v. Britton, 523 U.S. 574 (1998); id. at 602 (Rehnquist, J., dissenting).

Agosto-de-Feliciano v. Aponte-Roque, 889 F.2d 1209, 1218-19 (1st Cir. 1989) (en banc).[3]

The personnel decisions of which Rosario-Urdaz complains do not rise to this level. Gonzalez once had an altercation with Rosario-Urdaz; allegedly Gonzalez had thrown food at Rosario-Urdaz when the latter, then Gonzalez' supervisor, reprimanded Gonzalez for eating outside of the lunch hour. Gonzalez was reprimanded and transferred. Nor can one make a federal law suit out of Gonzalez' transfer back by Rosario-Morales several years later, whatever private motive Rosario-Morales may have had (Gonzalez was a PDP supporter) and even though this was distasteful to Rosario-Urdaz. Agosto-de-Feliciano, 889 F.2d at 1217.

Rosario-Urdaz says that the office in which she was operating was regarded by the new administration as a nest of NPP supporters; Rosario-Morales says in her deposition that the office had been performing poorly and that the decision to close the office and transfer employees elsewhere (some of whom were PDP members) was made for operational reasons which she described in her deposition. Whether or not political differences played some part in the decision to close the office and reassign employees,

---

[3]Agosto-de-Feliciano was decided before the Supreme Court decision in Rutan rejecting as too stringent another circuit's requirement that such actions be the "substantial equivalent of a dismissal," 497 U.S. at 75-76. We follow previous panels in assuming that the "unreasonably inferior" standard is still viable. See Acosta-Orozco v. Rodriguez-de-Rivera, 132 F.3d 97, 101 n. 5 (1st Cir. 1997).

-10-

the fact remains that Rosario-Urdaz was reassigned to a position of the same rank and salary and has not shown "unreasonably inferior" conditions.

The only charge that gives us any pause is Rosario-Urdaz' brief statement that she lost duties after the new administration took over. In certain circumstances—say, utterly depriving an employee of work indefinitely for political reasons—this might make out a claim. See Agosto-de-Feliciano, 889 F.2d at 1219-20. But Rosario-Urdaz' brief provides no detail whatsoever as to why her change of duties was so reprehensible or even what the change in duties entailed.

As to Gonzalez and Agosto, they were not supervisors but co-workers. Unless they carried on a substantial campaign of harassment, instigated or knowingly tolerated by superiors, their acts would not constitute the mis-exercise of government power at which section 1983 is aimed. Guzman v. City of Cranston, 812 F.2d 24, 26 (1st Cir. 1987); see also Woodward v. City of Worland, 977 F.2d 1392, 1400 (10th Cir. 1992), cert. denied, 509 U.S. 923 (1993). There is no evidence that what they did was either instigated or tolerated by Rivera-Hernandez, Rosario-Morales, or anyone else in authority.

Gonzalez criticized Rosario-Urdaz in a letter to Rivera-Hernandez, implying that she was not cooperating with the new administration and saying that a restructuring was needed; the

letter had strong political coloration but Gonzalez was entitled to her opinion, and this was not an adverse employment decision. As for Agosto, on one occasion he told Rosario-Urdaz that the prior administration was a bunch of crooks; for this he was reprimanded by Rivera-Hernandez, who wrote Agosto a letter "emphatically reject[ing]" this behavior and warning that it could not be repeated "under any circumstances."

A single insult by a co-worker with no supervisory power is not political discrimination by one exercising official authority. Cf. Webber v. Int'l Paper Co., 417 F.3d 229, 236-37 (1st Cir. 2005). Rosario-Urdaz says that the incidents must be considered as a whole and the joint action of the defendants comprised a "witch hunt" directed against her. Incidents can take color from, and cumulate with, other incidents, and conspiracy can sometimes be inferred from parallel or interrelated actions. Nothing in the disparate incidents before us suggests any such conspiracy.

We turn now to the cross-appeal by the DLHR secretary, objecting to the district court's bench-trial finding of a due process violation in Rosario-Urdaz' termination and the court's resultant reinstatement order. The reinstatement calls for official action, but the secretary does not challenge the district court's authority to order it. The secretary asserts only that there was no due process violation because Rosario-Urdaz was not

properly appointed as a career employee and therefore never had a property interest in her job.

The parties agree that if Rosario-Urdaz was a career employee under Puerto Rico law, then she had a right in the present circumstances to a due process hearing from the state before termination. Cf. Kauffman v. P.R. Tel. Co., 841 F.2d 1169, 1173 (1st Cir. 1988). The parties also assume that under Puerto Rico law, a serious flaw in the process of Rosario-Urdaz' original appointment, however many years earlier, permits the secretary to discharge her summarily. Finally, they assume that if the flaw is established in the federal court proceeding, this nullifies the appointment both under state law and for purposes of due process protection, although the secretary concedes that the burden is upon the secretary to show the nullifying flaw.

Whether this is a good way to operate a civil service system or to frame federal due process protections might be debated. However, the Supreme Court, e.g., Town of Castle Rock v. Gonzales, 125 S. Ct. 2796, 2803 (2005), makes the issue whether there is a protectible property right turn on state law, and the parties' view of Puerto Rico law is supported by precedent. Colón-Pérez v. Mayor of the Municipality of Ceiba, 112 P.R. Dec. 740, 12 P.R. Offic. Trans. 934, 940 (P.R. 1982) (flawed appointment "void" under Puerto Rico law); Kauffman, 841 F.2d at 1173 (same).

At the bench trial on reinstatement, Rosario-Urdaz' counsel presented evidence of her appointment to a career position and her termination from this position without a hearing, and counsel then rested Rosario-Urdaz' case in chief. The DLHR then presented Rosario-Urdaz' personnel file and one witness, Gladys Rivera, who described the audit of Rosario-Urdaz' appointment which underpinned the discharge. The first reason offered for finding the original appointment void was Rosario-Urdaz' alleged lack of the required experience to qualify for the appointment.

The evidence is that the position of Information Representative requires a bachelor's degree and "one year of experience in functions of similar nature and complexity to those carried out by a Writer of Information"--a term that the parties treat as equivalent to Information Representative. Rosario-Urdaz had the degree; as to the required experience, Rosario-Urdaz' personnel file contained a verification that she met the requirement because she had "two (2) years and four (4) months of experience in functions of a nature and complexity similar to those held by an Information Writer."

Gladys Rivera asserted that the verification was not supported by anything in the file and that an "equivalency study" revealed that Rosario-Urdaz' prior position overlapped in some respects with the position of Information Representative but that overlap was not enough to establish equivalency. It followed

-14-

(Gladys Rivera argued) that lacking equivalency, Rosario-Urdaz did not have the specified experience for her career position.

Surprisingly, Gladys Rivera also testified at the bench trial that she had never examined the requirements or duties of an Information Writer. This, from the district court's point of view, undermined her testimony as to Rosario-Urdaz' lack of equivalent experience and also contradicted, at least implicitly, the letter that Gladys Rivera had drafted for Rivera-Hernandez explaining why Rosario-Urdaz was being terminated. The district court's refusal to credit Gladys Rivera's opinion as sufficient to establish Rosario-Urdaz' lack of the experience qualifications was within its discretion. EIMSKIP v. Atl. Fish Mkt., Inc., 417 F.3d 72, 76 (1st Cir. 2005).

The termination letter and Gladys Rivera's testimony gave an alternative ground for treating the appointment as a nullity, namely, the inference that Rosario-Urdaz short-circuited the requisite merit process to receive the position. The inference rested on the facts that in 1995 the DLHR had begun the process of determining Rosario-Urdaz' qualifications a month before the job announcement was publicly posted and that Rosario-Urdaz resigned from her former position three days before she was to be interviewed for the Information Representative position.

The district court did not discuss this alternative ground, but the inference is not very compelling and the district

-15-

court was not obliged to accept it.  The timing of the equivalency study could indicate that Rosario-Urdaz anticipated applying for a job she expected to become available; her early resignation could have reflected confidence that she would succeed in her application.  Just what happened is quite obscure.

The DLHR accepted that it had the burden of proof to show that a decade-old appointment, valid on its face, was instead a nullity.  Conceivably, Rosario-Urdaz might have shed light on the matter; but the defense deposed her and apparently adduced nothing to support its position.  Had it given Rosario-Urdaz a pre-termination hearing, the DLHR's own fact-finding might have resolved the issue; as it is, the matter was left to the district judge to resolve and we cannot say that his decision was wrong.

To sum up, we affirm both the dismissal of Rosario-Urdaz' damage claims for political discrimination and the grant of injunctive relief restoring her to her career position.  Each side shall bear its own costs on this appeal.

It is so ordered.