Santos **RIVERA TORRES,**
**et al., Plaintiffs,**

v.

Miguel G. **ORTIZ VELEZ,**
**et al., Defendants.**

No. 01–CV–1244 (JAF).

United States District Court,
D. Puerto Rico.

Nov. 26, 2002.

Francisco R. Gonzalez–Colon, F.R. Gonzalez Law Office, San Juan, PR, for Plaintiffs.

Johanna M. Emmanuelli–Huertas, Pedro Ortiz Alvarez Law Offices, Ponce, PR, for Defendants.

### OPINION AND ORDER

FUSTE, District Judge.

Plaintiffs, Santos Rivera Torres ("Rivera Torres"); his wife, Daisy Nazario Santana; their conjugal partnership; and their daughters, Yasira and Zahira Rivera Naza-rio, bring the present complaint against the Municipality of Sabana Grande ("Municipality"); the Mayor of the Municipality, Miguel G. Ortiz Vélez; the Municipality's Sports Director, Sammy Vega; and other unnamed Defendants. *Docket Document No. 1.* Plaintiffs allege violations of 42 U.S.C. § 1983 (1994 & Supp.2002) and Puerto Rico law. *Id.*

Defendants Municipality, Ortiz, and Vega move for summary judgment. *Docket Document Nos. 47, 55.* Plaintiffs oppose the motion. *Docket Document Nos. 56, 70.*

### I.

### *Factual and Procedural Synopsis*

Unless otherwise indicated, we derive the following factual summary from the statement of uncontested facts submitted by Defendants in their motion for summary judgment and by Plaintiffs in their opposition. *Docket Document Nos. 47, 55, 56, 70.*

Defendants Ortiz and Vega are affiliated with the Partido Popular Democrático (Popular Democratic Party, "PPD"). *Docket Document No. 1.* Plaintiff Rivera Torres has been associated with the Partido Nuevo Progresista (New Progressive Party, "NPP") since November 1998.[1]

Plaintiff Rivera Torres began working at the Municipality as a Sports Instructor and became a career employee of Defendant Municipality on January 1, 1982. On May 1, 1985, Plaintiff was transferred to the career position of "in-charge" of the Municipal Gymnasium.

Plaintiff Rivera Torres affiliated himself with the New Progressive Party in November 1998. Two weeks later, Plaintiff Rivera Torres became the local president of the party and the official candidate for

1. Future references to "Plaintiff" allude to Plaintiff Santos Rivera Torres.

the 2000 mayoral race in Sabana Grande. Plaintiff ran in opposition to the incumbent PDP candidate, Defendant Ortiz.

Plaintiff asserts that once he became a member of the NPP and a mayoral candidate, he suffered a rash of discriminatory behavior at the hands of his supervisors and municipal officers. *Docket Document Nos. 1, 56.*

Plaintiff alleges that the first act of political discrimination occurred in January 1999 when Defendants demoted him, stripped him of his authority, and assigned Luis Arenas to the gym to watch over Plaintiff and report back to Defendants about his actions. *Docket Document No. 56.* Plaintiff claims that in the same month, Defendants removed the phone from the Municipal Gymnasium, which impeded his ability to work effectively. *Id.*

Plaintiff also avers that in March 1999, Defendants suspended Plaintiff for thirty days based on alleged workplace infractions. *Id.* Plaintiff appealed the suspension in June 1999, and it was eventually overturned in October 2000 by Puerto Rico's Personnel Administration Systems Appeal Board. At that time, the sanction was deleted from Plaintiff's record and he was paid his past unearned salary. *Id.*

Plaintiff contends that in April 2000, Defendants refused to approve his proposed transfer to the Commonwealth's Department of Sports and Recreation. *Id.*

Finally, Plaintiff asserts that he attempted to resign in June 5, 2000 because he felt that he was the victim of political persecution. *Id.* In a letter dated June 28, 2000, Defendant Ortiz refused to accept Plaintiff's proffered resignation because Plaintiff was under investigation for a considerable number of absences from work. Although Plaintiff's resignation was not accepted, he alleges that he was not allowed to continue working at the gym.

Plaintiff Rivera Torres and Defendant Ortiz continued to campaign against each other in the race for mayor. Plaintiff submits tapes of statements made by Defendant Ortiz between June and October 2000. In the tapes, Defendant Ortiz claims that Plaintiff is a weak candidate and refers to Plaintiff as a thief and a rat. Plaintiff alleges that on September 20, 2000, Defendant Ortiz stated that he would not "accept the resignation of the candidate because he's being investigated on some sick leave days he took. He's a crook." Plaintiffs assert the comments made in the context of the campaign establish Defendant Ortiz' political animus toward Plaintiff Rivera Torres.

On November 7, 2000, Defendant Ortiz won the race for mayor. On November 13, 2000, Defendant Ortiz accepted Plaintiff's resignation. Plaintiff claims that Defendant Ortiz' inordinate delay in accepting his resignation was politically motivated and effectively disabled Plaintiff from finding other government employment.

Defendants deny that political animus motivated any of their actions. They assert that Plaintiff was unduly absent from work and away from his work area, which prompted their personnel decisions. Plaintiff counters that most of his absences were caused by a shoulder injury in January 1999 and were approved by his physician.

Plaintiffs filed the present complaint on February 28, 2001, alleging that Plaintiff Rivera Torres suffered political discrimination and deprivation of due process in violation of the First and Fourteenth Amendments of the Constitution, U.S. CONST. amend I, XIV, and 42 U.S.C. § 1983. *Docket Document No. 1.* Plaintiffs Nazario Santana, Yasira Rivera Nazario, and Zahira Rivera Nazario assert emotional distress under Puerto Rico tort law. *Id.*

Plaintiffs request compensatory and punitive damages, as well as injunctive relief. *Id.*

The Deputy Mayor of the Municipality, Noel Matias, and the Municipality's Human Resources Director, Migdalia Rodriguez, were included in the complaint as Defendants. *Id.* Defendants Rodriguez and Matias moved to dismiss for failure to state a claim on July 5, 2001. *Docket Document No. 19.* On September 5, 2001, we granted the motion to dismiss as requested. *Docket Document No. 34.*

Defendants Municipality, Ortiz, and Vega moved for summary judgment on July 1, 2002 and tendered a supplemental motion on October 7, 2002. *Docket Document Nos. 47, 55, 65.* Defendants maintain that Plaintiff Rivera Torres's section 1983 action is partially barred by the applicable statute of limitations and the doctrine of qualified immunity. They further argue that Plaintiff has not establish a viable claim of political discrimination against Defendant Vega. *Id.*

Plaintiff opposes the motion for summary judgment on the grounds that his action is timely under the continuing violation doctrine, that he has articulated a claim for political discrimination against each of the remaining Defendants, and that qualified immunity is not applicable in this instance. *Docket Document Nos. 56, 70.*

## II.

### Standard for Summary Judgment

The standard for summary judgment is straightforward and well-established. A district court should grant a motion for summary judgment "if the pleadings, depositions, and answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgement as a matter of law." FED. R. CIV. P.

56(c); *see Lipsett v. Univ. of P.R.,* 864 F.2d 881, 894 (1st Cir.1988). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law," and "genuine" if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The burden of establishing the nonexistence of a genuine issue as to a material fact is on the moving party. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This burden has two components: (1) an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and (2) an ultimate burden of persuasion, which always remains on the moving party. *See id.* In other words, "[t]he party moving for summary judgement, bears the initial burden of demonstrating that there are no genuine issues of material fact for trial." *Hinchey v. NYNEX Corp.,* 144 F.3d 134, 140 (1st Cir.1998). This burden "may be discharged by showing that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. After such a showing, the "burden shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor." *DeNovellis v. Shalala,* 124 F.3d 298, 306 (1st Cir.1997) (citing *Celotex,* 477 U.S. at 322–25, 106 S.Ct. 2548).

Although the ultimate burden of persuasion remains on the moving party and the court should draw all reasonable inferences in favor of the nonmoving party, the nonmoving party will not defeat a properly supported motion for summary judgment by merely underscoring the "existence of some alleged factual dispute between the

parties"; the requirement is that there be a genuine issue of material fact. *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505; *Goldman v. First Nat'l Bank of Boston,* 985 F.2d 1113, 1116 (1st Cir.1993). In addition, "factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Under Rule 56(e) of the Federal Rules of Civil Procedure, the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *see also Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Summary judgment exists to "pierce the boilerplate of the pleadings," *Wynne v. Tufts Univ. Sch. of Med.,* 976 F.2d 791, 794 (1st Cir.1992), and "determine whether a trial actually is necessary." *Vega–Rodriguez v. P.R. Tel. Co.,* 110 F.3d 174, 178 (1st Cir.1997).

## III.

### *Analysis*

### A. *Statute of Limitations*

Plaintiffs filed the present action on February 28, 2001. Defendants move for summary judgment on the ground that any alleged section 1983 violation that occurred more than one year before Plaintiffs filed suit is time-barred. *Docket Document No. 55.*

Plaintiffs counter that Defendants have continuously discriminated against Plain-tiff Rivera Torres since January 1999 and that each politically discriminatory act restarts the statute of limitations. *Docket Document No. 70.*

### 1. *Applicable Statute of Limitations*

■ To determine the applicable statute of limitations for this action, we first turn to Section 1983 to determine its provisions. Section 1983, however, lacks an accompanying federal statute of limitations.[2] *See* 42 U.S.C. § 1983. Consequently, we adopt relevant provisions from the analogous statute of limitations of the forum state. *See Wilson v. Garcia,* 471 U.S. 261, 266–80, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) (directing federal courts in section 1983 actions to borrow and apply a state's statute of limitations for personal injury cases).

■ The parties agree that in section 1983 actions, the most appropriate provision is the statute of limitations for personal injury cases. *See Owens v. Okure,* 488 U.S. 235, 236, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989). In Puerto Rico, a one-year statute of limitations governs personal injury actions. *See* 31 L.P.R.A. § 5298(2) (1991).[3] Therefore, we apply the one-year prescriptive period to Plaintiffs' section 1983 action. *See Rivera–Ramos v. Román,* 156 F.3d 276, 282 (1st Cir.1998).

### 2. *Date of Accrual*

■ "Although the limitations period is determined by state law, the date of accru-

2. Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

3. Section 5298 stipulates:

The following prescribe in one (1) year:
. . . .
(2) Actions to demand civil liability for grave insults or calumny, and for obligations arising from the fault or negligence mentioned in section 5141 of this title, from the time the aggrieved person had knowledge thereof.

31 L.P.R.A. § 5298.

al is a federal law question." *Carreras–Rosa v. Alves–Cruz,* 127 F.3d 172, 174 (1st Cir.1997) (per curiam); *see also Rivera–Ramos,* 156 F.3d at 282 ("For section 1983 actions, federal law governs the date on which a cause of action accrues (i.e., when the statute begins to run) while the length of the period and tolling doctrine are taken from local law.") (internal citations omitted). The one-year statute of limitations "begins running one day after the date of accrual, which is the date plaintiff knew or had reason to know of the injury." *Benitez–Pons v. P.R.,* 136 F.3d 54, 59 (1st Cir.1998) (internal citations omitted).

■ "It is by now well established that, in employment discrimination actions, limitations periods normally start to run when the employer's decision is made and communicated to the affected employee." *Morris v. Gov't Dev. Bank of P.R.,* 27 F.3d 746, 750 (1st Cir.1994) (section 1983 case) (citing *Delaware State Coll. v. Ricks,* 449 U.S. 250, 261, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980)). A plaintiff does not need to know of the discriminatory animus behind the adverse employment action for the statute of limitations to begin to run. *Morris,* 27 F.3d at 749–750. Furthermore, a plaintiff does not need to know all of the facts supporting his claim before the statute of limitations may commence. *Id.* at 750 (internal citations omitted). Rather, unambiguous and authoritative notice of the adverse employment action is all that is required to trigger the limitations period. *See Rivera–Muriente v. Agosto–Alicea,* 959 F.2d 349, 353 (1st Cir.1992) (section 1983 case).

### 3. *Alleged Acts of Discrimination*

■ "The first step in fixing accrual is to identify the actual injury of which the plaintiff complains." *Guzman–Rivera v. Rivera–Cruz,* 29 F.3d 3, 5 (1st Cir.1994).

Plaintiff Rivera Torres bases his section 1983 action on the following alleged incidents of political discrimination: (1) In January 1999, Defendants removed the phone from his office; (2) In January 1999, Defendant Ortiz ordered Arenas, another employee of the Municipality, to take on Plaintiff's job duties, supervise Plaintiff, and track his movements; (3) In March 1999, Defendants falsely accused and unjustly suspended Plaintiff for leaving his work-area and being absent from work; (4) In April 2000, Defendant Ortiz refused to approve Plaintiff's transfer to the Commonwealth's Sports and Recreation Department in Mayaguez; (5) On June 28, 2000, Defendant Ortiz declined to accept Plaintiff's resignation and then intentionally deferred the decision to accept the resignation until after the local elections.

Defendants acknowledge that Defendant Ortiz' refusal to transfer Plaintiff in April 2000, his refusal to accept Plaintiff's resignation in June 2000, and the decision to approve the resignation in November 2000 fall within the applicable statute of limitations.[4] *Docket Document No. 55.* They maintain that any other alleged incidents are time-barred.

■ Plaintiff had notice of the alleged phone removal and the appointment of Arenas in January 1999. Therefore, these claims accrued at that time. *See Morris,* 27 F.3d at 750 (finding that claim accrued on date that plaintiff had authoritative no-

---

**4.** Plaintiff Rivera Torres appears to argue that Defendant Ortiz' November 13, 3000 acceptance of Plaintiff's resignation violated his due process rights. *Docket Document No. 1.* In the context of the present summary judgment,

however, both parties refer to this incident merely as an act of political discrimination in violation of the First Amendment. As such, we do not analyze this incident within the framework of the Fourteenth Amendment.

tice of his suspension). Similarly, Plaintiff Rivera Torres' claim that Defendants falsely accused and unjustly suspended him accrued on March 10, 1999 because that is the day that he learned of his suspension. *Id.* Consequently, these acts are time-barred.

Although Plaintiff acknowledges that many of the purportedly discriminatory acts occurred outside of the statute of limitations period, he invokes the continuing violation doctrine as a means to rescue his otherwise time-barred allegations. *Docket Document No. 70.*

#### 4. *Continuing Violation Doctrine*

The continuing violation doctrine creates an equitable exception to the statute of limitations when unlawful behavior is alleged to be ongoing. *See Provencher v. CVS Pharmacy,* 145 F.3d 5, 13 (1st Cir.1998). In effect, the continuing violation theory allows a plaintiff to prosecute claims that would otherwise be time-barred. However, "[t]he [continuing violation] doctrine is generally thought to be inapposite when an injury is definite, readily discoverable, and accessible in the sense that nothing impedes the injured party from seeking to redress it." *Dziura v. United States,* 168 F.3d 581, 583 (1st Cir.1999) (rejecting plaintiff's continuing violation theory in taxpayer suit against IRS).

In *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002), the Supreme Court clarified the continuing violation doctrine in the context of a Title VII race discrimination case. In *Morgan,* the Court found that a plaintiff who alleges discrete acts of discrimination, such as a failure to promote or transfer, can only recover for those acts that occurred within the relevant statute of limitations period. *Id.,* 122 S.Ct. at 2073. Discrete acts of discrimination that occurred outside of the statute of limitations period are not actionable, even if they are substantially related to the timely act. *Id.*

The reasoning in *Morgan* applies with equal force to the present section 1983 suit. *Cf. Muñiz–Cabrero v. Ruiz,* 23 F.3d 607, 610 (1st Cir.1994) (explaining that the First Circuit employs the continuing violation theory to evaluate the timeliness of section 1983 actions); *Velázquez v. Chardón,* 736 F.2d 831, 833 (1st Cir.1984) (applying Title VII case law to interpret potential continuing violation in section 1983 action). Plaintiff alleges that Defendants denied his request to transfer and delayed the approval of his resignation in the one-year period before he filed suit. These alleged acts of political discrimination are discrete in nature. *See Morgan,* 122 S.Ct. at 2073. Plaintiff cannot use discrete acts that occurred within the statute of limitations to save discrete time-barred acts of discrimination. *Id.* Since Plaintiff's alleged deprivation of duties and equipment in January 1999 and his suspension in March 1999 are discrete in nature, they are not actionable under the continuing violation theory.[5]

### B. *Defendant Vega*

Defendant Vega moves for summary judgment on the ground that Plaintiff Rivera Torres has not made allegations or submitted evidence that he engaged in any acts of discrimination or deprived Plaintiff of his constitutional rights. *Docket Document No. 47.*

We examine Defendant Vega's contention in the context of the remaining claims of discrimination, which include the denial

---

5. Although we need not decide the issue at this time, it is possible that the time-barred prior incidents will be admissible as relevant background evidence. *See O'Rourke v. City of Providence,* 235 F.3d 713, 726 (1st Cir.2001) (internal citation omitted).

of a request to transfer and the denial and deferment of a request to resign.

In the opposition to summary judgment, Plaintiff alleges that "Co–Defendant Sammy Vega participated in the political persecution to harm and terminate Plaintiffs." *Docket Document No. 56.* Plaintiff does not make specific factual allegations to this effect. Furthermore, Plaintiff has not proffered evidence that Defendant Vega supervised, carried out, or participated in any of the purported acts of discrimination that occurred within the statute of limitations. As such, Plaintiff has failed to create a genuine issue of material fact as to his claims against Defendant Vega. *See* FED. R. CIV. P. 56(e) (explaining that the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial."). Therefore, this court dismisses Plaintiff's claim of political discrimination against Defendant Vega.[6]

We turn now to the merits of Plaintiff's claims of political discrimination against Defendants Municipality and Ortiz.

## C. *Political Discrimination*

Plaintiff asserts that Defendants Municipality and Ortiz violated his First Amendment rights by declining to transfer him and denying and delaying his request to resign.

■ The First Amendment protects non-policymaking public employees from adverse employment actions based on their non-conforming political opinions. *See Padilla–Garcia v. Guillermo Rodriguez,* 212 F.3d 69, 74 (1st Cir.2000); *see also Rutan v. Republican Party of Illinois,* 497 U.S. 62, 75–76, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990). We employ a two part burden-shifting analysis to evaluate claims of political discrimination. *See Mount Healthy*

*City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Padilla–Garcia,* 212 F.3d at 74.

■ To establish a prima facie case, a plaintiff must show that party affiliation was a substantial or motivating factor behind a challenged employment action. *Padilla–Garcia,* 212 F.3d at 74. The burden then shifts to the defendant, who must establish, by a preponderance of the evidence, that he would have taken the same action regardless of the plaintiff's political beliefs. *Id.* Nonetheless, "[t]he evidence by which the plaintiff established her prima facie case may suffice for a factfinder to infer that the defendant's reason is pretextual and to effectively check summary judgment." *Id.* (internal citations omitted).

### 1. *Transfer*

### (a) *Prima Facie Case*

■ On April 28, 2000, Eric Labrador Rosa, the Secretary of the Commonwealth's Department of Sports and Recreation, wrote a letter to Defendant Ortiz explaining that Plaintiff Rivera Torres had been selected to work for the Commonwealth as an Administrative Assistant I. *Docket Document No. 47, Exh. 27.* Labrador Rosa requested a transfer change report by May 16, 2000 to complete Plaintiff's transfer from the Municipality's Department to that of the Commonwealth. *Id.* Defendant Ortiz never responded to the letter, and as a result, the transfer was never effectuated. *Id.* at Exh. 38.

■ A public employer cannot deny its employee a transfer based on that employee's political affiliation. *See Rutan,* 497 U.S. at 76, 110 S.Ct. 2729. Evidence of a highly charged political atmosphere coupled with the parties' competing political

---

**6.** Future references to "Defendants" allude to Defendants Ortiz and Municipality.

persuasions may be sufficient to show discriminatory animus, especially in an instance where a plaintiff was a "conspicuous target" for political discrimination. *Rodriguez–Rios v. Cordero,* 138 F.3d 22, 24 (1st Cir.1998); *Acevedo–Diaz v. Aponte,* 1 F.3d 62, 69 (1st Cir.1993). Thus, we consider whether Plaintiff has proffered evidence that would "permit a rational factfinder to conclude that the challenged personnel action occurred and stemmed from a politically based discriminatory animus." *Rivera–Cotto v. Rivera,* 38 F.3d 611, 614 (1st Cir.1994).

The parties do not dispute that Defendant Ortiz refused to approve Plaintiff's transfer. Since Plaintiff has identified an adverse employment action, we evaluate whether discriminatory political animus caused the employment decision at issue here.

When Plaintiff sought the transfer, he and Defendant Ortiz were political rivals in a sensationalistic campaign for mayor. Plaintiff has proffered numerous statements by Defendant Ortiz as evidence of his political animus toward Plaintiff, including public statements that Plaintiff, his political opponent, was a rat, a thief, and a crook. Furthermore, Plaintiff attests that Defendant Ortiz' secretary told him that Defendant Ortiz refused to approve the transfer because the mayor did not sign papers without importance, and that this particular request was not important to him. This evidence, viewed together, is sufficient to establish Defendant Ortiz' political animus. Therefore, we find that Plaintiff Rivera Torres has stated a prima facie case of a politically discriminatory failure to transfer.

### (b) *Mt. Healthy Defense*

The burden shifts to Defendants, who must show, by a preponderance of the evidence, that they would have taken the same action regardless of Plaintiff's political affiliation. *See Padilla–Garcia,* 212 F.3d at 77.

■ Defendants maintain that they have satisfied this burden because they were investigating Defendant for frequent absences from work. As evidence, Defendant Ortiz submits an affidavit stating that by the time he received the request for the transfer in April 2000, his office was investigating Plaintiff's poor attendance record. Defendant Municipality's Human Resources Director, Migdalia Rodriguez, also attests that she began an investigation into Plaintiff Rivera Torres's excessive absences in April 2000. However, neither Ortiz nor Rodriguez actually attests that this investigation was the reason they denied the transfer. Furthermore, Defendants have not submitted any evidence that a fledgling investigation into an employee's record of absenteeism is a sufficient basis to deny a transfer or that this was normal procedure. Without evidence to this effect, we necessarily find that Defendants have not satisfied their burden.

As an alternative justification for the decision, Defendants claim that the denial of the transfer actually helped Plaintiff. Defendants argue that a transfer to the Commonwealth would have involved materially adverse conditions and would have been considered a demotion. Defendants point to documents prepared by the Commonwealth in May and June 2000, which indicate that Plaintiff's proposed transfer would constitute a demotion. However, these internal documents were completed after the April 28, 2000 request for the transfer had been submitted to Defendant Ortiz for his approval. Furthermore, these papers were not provided to Defendants until two years later, in July 2002, pursuant to a subpoena in the present suit. Defendants do not offer any evidence that they knew or suspected that the transfer would have been equivalent to a demotion

at any time while the request for the transfer was pending. Moreover, Defendants do not submit that this was actually their motivation. Finally, Defendants have not expressed that they had a duty to deny a voluntary transfer if it might negatively effect a municipal employee's salary. Therefore, we find that Defendants' proposed justification does not satisfy their burden.

Defendants have not established by a preponderance of the evidence that they would have refused to transfer Plaintiff regardless of his political affiliation. As such, Defendants are not entitled to the *Mt. Healthy* defense in this instance of alleged discrimination.

### 2. *Resignation*

#### (a) *Prima Facie Case*

■ It is undisputed that on June 28, 2000, Defendant Ortiz declined to accept Plaintiff's resignation and deferred acceptance until after the November 7, 2000 elections. Defendants do not challenge Plaintiff's position that this was an adverse employment action.

Plaintiff asserts that Defendant Ortiz denied his resignation because of Plaintiff's political affiliation and outspoken political beliefs. As evidence of the alleged political animosity, Plaintiff refers to the heated campaign between himself and the incumbent candidate, Defendant Ortiz. Plaintiff has proffered numerous statements by Defendant Ortiz as evidence of political animus, including his alleged public statement on September 20, 2000 that he would not "accept the resignation of the candidate because he's being investigated on some sick leave days he took. He's a crook." The proffered evidence, viewed together, is sufficient to establish Defendant Ortiz' political animus. Therefore, we find that Plaintiff has established a prima facie case of political discrimination with regards to the decision his resignation.

#### (b) *Mt. Healthy Defense*

■ In his letter denying Plaintiff's request to resign, Defendant Ortiz reasoned that "[i]n view of the fact that the Municipality of Sabana Grande is investigating your pattern of absences due to illness and there exist justified reasons to prove that these could be unjustified, I am obligated to not accept the resignation." *Docket Document No. 47, Exh. 30.* Defendant Ortiz further states that he seeks to "determine whether the 63½ absences during the period from January 13 to May 31, 2000, respectively, due to motives of illness, are justified, when on the other hand, you are actively participating in a political campaign." *Id.*

Although Plaintiff Rivera Torres does not challenge Defendant Ortiz' right to accept or reject his resignation, Plaintiff attests that the underlying investigation into his absences was a pretext for political animus and a way to find out if Plaintiff was actually absent because he was working on his political campaign. Plaintiff contends that Defendant Ortiz illegally intertwined his position as a candidate for mayor with his role as a municipal officer and employer.

■ "In a political discrimination case, the plaintiff may discredit the proffered nondiscriminatory reason, either circumstantially or directly, by adducing evidence that discrimination was more likely than not a motivating factor." *Padilla–Garcia,* 212 F.3d at 77.

Here, Plaintiff has presented ample evidence that Defendant Ortiz harbored political animus toward him. Plaintiff and Defendant Ortiz were political opponents when Defendant Ortiz began investigating Plaintiff's attendance record, declined to accept Plaintiff's resignation, and publicly inferred that he refused to do so because Plaintiff was a crook. The evidence suggests that Defendant Ortiz' political rivalry with Plaintiff illegally permeated the em-

ployer-employee relationship. The proof of discriminatory animus in the present case is sufficient to create a genuine issue as to whether Defendant Ortiz' investigation served as a pretext to mask his improper motive. *See Aponte–Santiago v. Lopez–Rivera,* 957 F.2d 40, 43 (1st Cir. 1992); *see also Rodriguez–Rios,* 138 F.3d at 26; *Acevedo–Diaz v. Aponte,* 1 F.3d 62, 70 (1st Cir.1993). Since Defendants have not foreclosed the possibility that Plaintiff's political affiliation was a substantial or motivating factor in Defendant's decision to decline and defer Plaintiff's resignation, we decline to summarily dispose of this claim.

### D. *Qualified Immunity*

■ Defendant Ortiz seeks qualified immunity in the present case for his decision to deny and defer Plaintiff's request to resign. Defendant Ortiz maintains that we should not subject him to personal liability for properly investigating Plaintiff's absences from work. Plaintiff maintains that Defendant Ortiz acted knowingly and with bad faith.

■ Qualified immunity is an affirmative defense shielding public officials sued in their individual capacity from civil damages so long as their conduct does not violate any clearly-established statutory or constitutional right of which a reasonable person would be aware. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Nereida– Gonzalez v. Tirado–Delgado,* 990 F.2d 701, 704 (1st Cir.1993) (stating that the doctrine of qualified immunity "shields government officials performing discretionary functions from civil liability for money damages when their conduct does not violate 'clearly established' statutory authority or constitutional rights of which a reasonable person would have known."). As such, we must determine as a matter of law whether the constitutional right in question was clearly established at the time of the alleged violation. *See Martinez Rodriguez v. Colon Pizarro,* 54 F.3d 980, 988 (1st Cir.1995). The phrase clearly established "denotes that at the time the challenged conduct occurred the contours of the right were sufficiently plain that a reasonably prudent state actor would have realized not merely that his conduct might be wrong, but that it violated a particular constitutional right." *Id.* (internal citations omitted); *see Anderson v. Creighton,* 483 U.S. 635, 638–40, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

Defendant Ortiz does not challenge whether the law on politically-motivated adverse employment decisions is clearly established. Rather, Defendant Ortiz asserts that his decisions to deny and defer Plaintiff's resignation were not motivated by political animus. However, as we explicated *supra,* Defendant Ortiz' motivation for denying and deferring Plaintiff's resignation is an unresolved issue of material fact.

If we were to now take Defendant Ortiz' alleged rational for the decision at face value, we " 'would permit an official to be granted qualified immunity as a matter of law even though the principal disputed question of fact in the case—the true purpose of intent motivating the official's conduct—remains unresolved.' " *Feliciano– Angulo v. Rivera–Cruz,* 858 F.2d 40, 45–46 (1st Cir.1988) (internal citation omitted); *see also Acevedo–Garcia v. Vera–Monroig,* 204 F.3d 1, (1st Cir.2000). Therefore, we decline to resolve the issue of qualified immunity since there remains a material question of fact as to Defendant's motivation for the challenged employment action.

### IV.

### *Conclusion*

In accordance with the foregoing, we **GRANT** in part and **DENY** in part Defendants' motion for summary judgment.

We find that Plaintiff's claims of political discrimination that accrued more than one year before Plaintiff filed suit are time-barred, and we **GRANT** Defendants' motion to dismiss Plaintiff's claims that Defendants removed his phone and appointed Arenas to the gym in January 1999 and suspended him in March 1999.

We **GRANT** Defendant Vega's motion to dismiss Plaintiff's claims of political discrimination against him on the ground that there is no genuine issue of material fact as to Defendant Vega's role in the alleged deprivations of Plaintiff Rivera Torres' First Amendment rights.

We **DENY** Defendants Ortiz and Municipality's motion for summary disposition of Plaintiff Rivera Torres' timely claims of political discrimination.

We **DENY** Defendant Ortiz' motion for qualified immunity.

**IT IS SO ORDERED.**