Daniel **JUARBE–VELEZ,**
**et al., Plaintiffs,**

v.

Lemuel **SOTO–SANTIAGO,**
**et al., Defendants.**

**Civil No. 06–2145 (FAB).**

United States District Court,
D. Puerto Rico.

June 11, 2008.

Nydia Gonzalez–Ortiz, Santiago & Gonzalez Law Office, Yauco, PR, for Plaintiffs.

Claudio Aliff–Ortiz, Michael C. McCall, Gary H. Montilla–Brogan, Aldarondo & Lopez Bras, Damaris Delgado–Vega, Guaynabo, PR, for Defendants.

## OPINION AND ORDER

BESOSA, District Judge.

Pending before the Court is the summary judgment motion filed by defendants Lemuel Soto–Santiago, Mayor of Arecibo, Luis Soto–Morales, Director of Arecibo's Emergency Management Office, and the Municipality of Arecibo itself (Docket No. 59). Plaintiffs Daniel Juarbe–Velez, Juan Morales–Colon, Alex Torres–Guzman, Luis J. Deida–Martinez, and Jack L. Arenas–Rodriguez opposed defendants' motion for summary judgment (Docket No. 78). Defendants filed a reply to the opposition (Docket No. 87). For the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** defendants' motion for summary judgment.

### I.   Local Rule 56

As an initial matter, it is necessary to discuss Local Rule 56. The Rule requires a motion for summary judgment to be supported by a statement of material facts. L.Civ.R. 56(b). A party opposing summary judgment is then required to submit a statement of facts admitting, qualifying or denying the facts submitted by the movant. L.Civ.R. 56(c). The opposing state-

ment may also contain a separate section of additional facts. Id. Nowhere in the Rule does it require or allow parties to submit legal analysis or conclusory statements of mixed fact and law. Both plaintiffs and defendants have run afoul of the Rule by doing just that.

While both parties at least attempted to cite to the record, neither one provided a statement of material facts as required by the Rule. Instead, both parties provided conclusory legal analysis with no factual details to support their points. For example, defendants asserted that "Plaintiff Deida does not have sufficient evidence to establish that his political affiliation was a substantial or motivating factor in any adverse employment action allegedly suffered by him." (Docket No. 60, p. 5.) Plaintiffs then responded simply by restating plaintiff's assertion in the positive, "Plaintiff Deida has sufficient evidence to establish that his political affiliation was a substantial or motivating factor in any adverse employment action suffered by him." (Docket No. 80, p. 3.) Both of these statements belong in each party's memorandum of law, not their Local Rule 56 statements of fact.

■ Had only one of the parties provided a statement of facts which complied with Local Rule 56, then the Court would have accepted those facts in their entirety, where properly supported. L.Civ.R. 56(e); *see Arroyo–Audifred v. Verizon Wireless, Inc.,* 527 F.3d 215 (1st Cir.2008); *Alsina–Ortiz v. Laboy,* 400 F.3d 77, 80 (1st Cir. 2005); *Garcia Sanchez v. Roman Abreu,* 270 F.Supp.2d 255, 258–59 (D.P.R.2003). Where both parties submit non-compliant statements, however, the Court is forced either to ferret through the record on its own, or accept the facts as alleged in the complaint. In this instance, the Court exercises its discretion to construct the factual record on its own from the parties'

submissions at summary judgment given its belief that the parties' failure to comply with the requirements of Local Rule 56 was not done in bad faith.

## II. Factual Background

Plaintiffs Daniel Juarbe–Velez, Juan Morales–Colon, Alex Torres–Guzman, Luis J. Deida–Martinez, and Jack L. Arenas–Rodriguez ("plaintiffs") are career employees of the Municipality of Arecibo who were hired prior to the start of defendant Lemuel Soto–Santiago's term as mayor of the municipality. All five plaintiffs work under defendant Luis Soto–Morales in the Emergency Management Office. All five plaintiffs claim that they have been discriminated against based upon their political affiliation. Although two of the five plaintiffs are members of the same political party as the two individual defendants, they claim that they have faced political discrimination because they worked under the prior administration.

The factual basis for each individual plaintiffs' claim is as follows:

### A. Luis Deida–Martinez

Luis Deida–Martinez was hired on April 1, 2003, during the administration of a Popular Democratic Party ("PDP") mayor, and currently holds the career position of Emergency Medical Technician. Deida–Martinez is a member of the New Progressive Party ("NPP"), which is the same political party to which defendants Lemuel Soto–Santiago and Luis Soto–Morales belong. Deida–Martinez alleges that he has suffered a number of adverse employment actions. First, he alleges that on or about September 2005, he was stripped of all the equipment needed to carry out the Search and Rescue assignments. At summary judgment, the record as to this claim is muddled. It appears that under the previous, PDP, administration, emergency med-

ical personnel were "loaned" ambulance equipment that Deida–Martinez calls "pressure equipment." (Docket No. 60–5, p. 50.) Once Soto–Morales became the director, however, he reclaimed all of this equipment (from all emergency medical personnel) and kept it in the office. (*Id.*) Deida–Martinez does not state that this action was directed at only PDP party members, or specific emergency medical personnel.

Second, Deida–Martinez claims that as of June 2005 he was stripped of his job functions and was not allowed to attend any rescue emergencies in the Municipality of Arecibo. Instead, he alleges, these emergency situations have been handled by volunteer personnel "mostly identified" with the NPP (Docket No. 2, p. 17). The record at summary judgment shows that Deida–Martinez continues to work as an Emergency Medical Technician; it neither supports nor hinders his claim that he has been prevented from attending rescue emergencies.

Third, Deida–Martinez alleges that the defendants prevented him from applying for the position of paramedic, which under the Soto–Santiago administration is separate from the position of Emergency Medical Technician. He alleges that these positions were filled by two unqualified NPP members. The record shows that Deida–Martinez received notice of the position opening two days prior to the deadline for applications. Although Deida–Martinez did not apply for the paramedic position, he claims that he did not do so because he spoke with defendant Soto–Morales who told him "no, the position is not convenient for you" (Docket No. 60–5, p. 19).

Fourth, Deida–Martinez alleges that defendants addressed memoranda to him commenting negatively upon his job performance in order to intimidate him. At summary judgment, it appears that Deida–

Martinez received three such memoranda: the first for improperly securing an oxygen tank in his ambulance, the second for watching a DVD during official work hours, and the third for arriving late. Deida–Martinez stated that other people had used the same ambulance with the third oxygen tank and not received a negative write up, and therefore he believed that the memorandum was a form of harassment.

Deida–Martinez alleges that both individual defendants know that he is a NPP member but that they discriminated against him anyway for being associated with the prior PDP administration. In his deposition, Deida–Martinez said that Soto–Morales knows that he is a member of the NPP, and by extension that he worked in the prior administration, because Deida–Martinez was the ambulance driver for Soto–Morales, who in turn was an emergency medical technician, for a period of five months to one year beginning when Deida–Martinez first started to work in the emergency and rescue department in 2003 (Docket No. 60–5, p. 25).

Deida–Martinez has had no similar personal contact with the defendant Mayor, Soto–Santiago. He tried to talk with the mayor between five to ten times, and once he even went to the mayor's house, where he spoke with the mayor's wife (Docket No. 60–5, p. 30). On other occasions, he and others attempted to deliver an unspecified number of letters to the mayor and to request an administrative hearing with the mayor to discuss complaints they had regarding matters in the emergency and rescue department (Docket No. 60–5, p. 35). Some of these letters were given to the mayor's secretary, others to the Human Resources Director, and others to Soto–Morales (*Id.* at pp. 35–36). Although Deida–Martinez never met with the mayor, he

did meet with three different directors of human resources (*Id.* at p. 36.).

The sole direct evidence offered by plaintiffs in the record that supports Soto–Morales's alleged mistreatment of Deida–Martinez is plaintiff Torres–Guzman's testimony that Soto–Morales said that the plaintiffs are not to be trusted because they come from the past administration and that "if it [were] up to him" they "would not be there because he has fifty-two volunteers" in whom he trusts (Docket No. 80, Ex. E, p. 34).

## B. Jack Arenas–Rodriguez

Jack Arenas–Rodriguez was hired on April 1, 2003, during the administration of a PDP mayor, and currently holds the career position of Emergency Medical Technician. Arenas–Rodriguez is a member of the NPP, which is the same political party to which defendants Soto–Santiago and Soto–Morales belong.

Arenas–Rodriguez alleges that he suffered similar forms of adverse employment actions as plaintiff Deida–Martinez did. First, he alleges that in or around September 2005, he was stripped of all the equipment needed to carry out Search and Rescue assignments. At summary judgment, the record as to this claim is muddled. Unlike plaintiff Deida–Martinez, Arenas–Rodriguez said that Soto–Morales's policy of collecting the equipment was not applied to everyone in the department (Docket No. 80, Ex. D., p. 158). On the other hand, Arenas–Rodriguez also said the decision by Soto–Morales to collect equipment "has nothing to do with politics" (Docket No. 60–7, p. 162).

Second, Arenas–Rodriguez claims that as of June 2005 he was stripped of his job functions and was not allowed to attend any rescue emergencies in the Municipality of Arecibo. Instead, he alleges, these emergency situations have been handled by volunteer personnel "mostly identified" with the NPP (Docket No. 2, pp. 18–19). The record at summary judgment shows that Arenas Rodriguez continues to work as an Emergency Medical Technician; it neither supports nor hinders his claim that he has been prevented from attending rescue emergencies.

Third, Arenas–Rodriguez alleges that defendants prevented him from applying for the position of paramedic, which under the Soto–Santiago administration is separate from the position of Emergency Medical Technician. He alleges that these positions were filled by two unqualified NPP members. Neither Arenas–Rodriguez nor the defendants adduced evidence to the summary judgment record with regard to this allegation.

Fourth, Arenas–Rodriguez alleges that defendants issued memoranda to him, commenting negatively upon his job performance in order to intimidate him. At summary judgment, it appears that Arenas–Rodriguez received one memorandum because he did not "punch" his time card during working hours (Docket No. 60–7, p. 137). Arenas–Rodriguez believed this was done to harass him because Soto–Morales, who issued the memorandum, knew that he was working in the field at the time. Additionally, other personnel who Arenas–Rodriguez described as Soto–Morales's proteges also did not "punch in" but they were not issued memoranda. (*Id.*)

Like Deida–Martinez, Arenas–Rodriguez alleges that both individual defendants discriminated against him for being associated with the prior PDP administration, even though he himself pertained to the NPP. In his deposition, Arenas–Rodriguez did not testify that Soto–Morales knows that he is actually a member of the NPP, although he reported seeing Soto–Morales at NPP events (Docket No. 80,

Ex. D., pp. 102, 104). He did testify, however, that Soto–Morales believes he is from the PDP because Soto–Morales has repeatedly addressed him as coming "from the other administration," as if he belongs to the PDP (Docket No. 80, Ex. D, pp. 110–111, 115, 119).

At odds with Deida–Martinez's reported testimony, Arenas–Rodriguez stated that he and Deida–Martinez met with the mayor at an activity (Docket No. 60-7, p. 128). During this impromptu encounter at an unnamed event, Arenas–Rodriguez said that he told the mayor that a group of emergency and rescue employees wanted an audience with him because of problems they had with Soto–Morales. (*Id.* at 128–29.) Arenas–Rodriguez also stated that a group of the plaintiffs voiced their concerns with Soto–Morales over the radio, at which time they also demanded a meeting with the mayor (Docket No. 80, Ex. D, p. 120). Nonetheless, the mayor never granted Arenas–Rodriguez and the other employees an audience. Lastly, as Deida Martinez also noted, the mayor was sent letters from the plaintiffs relating to problems that the plaintiffs had with Soto–Morales.

## C. Daniel Juarbe Velez & Juan Morales Colon

Daniel Juarbe Velez and Juan Morales Colon were named to the career positions of Rescue Technician—which they still hold—during the administration of a PDP mayor. Juarbe–Velez and Morales–Colon raise identical allegations of adverse employment actions.[1]

First, Juarbe–Velez and Morales–Colon claim that in or around September 2005 they were stripped of all the equipment necessary to carry out search and rescue assignments. At summary judgment, the record is muddled, but it appears that Soto–Morales decided to keep rappelling equipment in a central location in the office, although he let two or three staff members keep their equipment with them at all times (Docket No. 80, Ex. C, p. 78).

Second, Juarbe–Velez and Morales–Colon allege that they were stripped of their job functions, not allowed to attend any rescue emergencies, and assigned to tasks unrelated to their jobs. Plaintiffs allege that their proper tasks as Rescue Technicians have been covered by volunteer personnel. Morales–Colon testified in his deposition that he was assigned to work as a "desk officer," which involved operating the radio and watching the physical plant (Docket No. 80, Ex. F., p. 16). Although both plaintiffs attended the desk prior to Soto–Morales becoming the director, they used to leave it unattended once an emergency occurred requiring their attention; under Soto–Morales the desk could not be left unattended. (*Id.*) This alleged reassignment to desk duties ended both when a new employee was hired as a desk officer, and because plaintiffs "just went over [Soto–Morales's] orders" (Docket No. 60-9, p. 18).

Third, Juarbe–Velez and Morales–Colon claim that neither of them have been sent to seminars or any kind of training "to keep up with the latest trends on safety management" even though volunteers and other employees were sent to such seminars (Docket No. 2, pp. 7, 9–10). At summary judgment, the record reveals that both plaintiffs have been able to attend training (Docket No. 60-9, pp. 28–29; 80, Ex. F, p. 30). The one particular training

---

1. Additionally, Juarbe–Velez specifically alleged that Soto–Morales told him that he was not trusted by the administration because he had been a director of a separate municipal office under the previous (PDP) mayor (Docket No. 2, pp. 7–8). This allegation supports plaintiffs' claim of a discriminatory motive but it is not a form of adverse treatment.

that these plaintiffs did not attend, but wanted to attend, was a training on how to cut people out of hybrid cars, which was a part of a longer rescue "academy" (Docket No. 60–9, p. 29; 80, Ex. F, p. 30). This academy was attended by new volunteers who were mostly from the NPP (Docket No. 80, Ex. F, pp. 30, 33).

Fourth, Juarbe–Velez and Morales–Colon allege that they have been unfairly issued memoranda commenting negatively upon their job performance simply to intimidate them. Morales–Colon testified in his deposition that the plaintiffs had been issued memoranda for not clocking in and out during their half hour lunch (Docket No. 80, Ex. F, pp. 38–39). Sometimes plaintiffs were in the field during their half-hour lunch, and sometimes they forgot. (*Id.*) At the same time, other employees who did not clock in and out but were part of Soto–Morales's "group" did not receive memoranda. (*Id.* at pp. 37–39.) Juarbe–Velez also testified as to two memoranda that he received. On one occasion he received a memorandum for studying material from his calculus class even though he was doing so during his lunch break (Docket No. 80, Ex. C., p. 58). On another occasion, Juarbe–Velez said that he was given a memorandum accusing him of insubordination for not turning in some radios as directed, even though he actually turned in the radios in question. (*Id.* at p. 59.)

Both plaintiffs allege that their political affiliation with the PDP is known to both individual defendants. Juarbe–Velez has provided direct evidence that Soto–Morales knew of his political allegiance, although Soto–Morales disputes this in his declaration (Docket No. 60–3). Juarbe–Velez testified in his deposition that Soto–Morales told him of a meeting that Soto–Morales had with the mayor. In the meeting, the mayor and Soto–Morales discussed a newspaper photograph showing Juarbe–Velez rescuing "an old lady" (Docket No. 80, Ex. C, p. 29). The mayor purportedly told Soto–Morales that the photo of Juarbe–Velez rescuing "the old lady" presented a bad image for the current administration because the rescuer (Juarbe–Velez) was from the PDP party. (*Id.*) On a separate occasion, Juarbe–Velez asked Soto–Morales why he had not been notified concerning his Christmas bonus. Soto–Morales responded by asking Juarbe–Velez if his "fellow" PDP colleagues had notified him of the bonus. (*Id.* at pp. 46–47). On a third occasion, Juarbe–Velez recounted a time when he and Soto–Morales had worked together under a former administration and Soto–Morales had said "you Populares [PDP], you don't know how to work." (*Id.* at pp. 49–50.)

Unlike Juarbe–Velez, Morales–Colon did not present direct evidence that Soto–Morales knows his party affiliation. Instead, Morales–Colon labeled himself a "Popular Democratic Party political activist," and said that everyone in Arecibo knows him and his political affiliation (Docket No. 80, Ex. F, p. 50). He is a ward president and formerly held the positions of electoral coordinator, electoral academy professor and "president of the youth" with the PDP. (*Id.* at p. 51.) Morales–Colon also stated that he and the mayor grew up in the same neighborhood, and that the mayor knows him as Johnny (rather than as Juan). (*Id.* at p. 52.) Morales–Colon believes that the mayor knows his political affiliation because he has seen the mayor's car pass in front of his house numerous times and Morales–Colon leaves a PDP van parked in front of his house (Docket No. 60–9, p. 54).[2]

2. Morales–Colon stated that he did not know     if the mayor was actually in his vehicle as it

Other than Juarbe–Velez's hearsay statement mentioned above, plaintiffs presented no direct evidence that Mayor Soto–Santiago knows the political affiliation of the plaintiffs or that he discriminated against them in any of the adverse employment actions described above. There is circumstantial evidence, however, that the mayor was aware of the running dispute in the Emergency Management Office.

Juarbe–Velez testified that he met the mayor at Doctor's Center Hospital in Arecibo, at which time he told the mayor that he wanted a meeting (Docket No. 60–6, p. 32). There is no evidence in the record that he then discussed politics or his dispute with Soto–Morales. On a separate occasion, Juarbe–Velez attempted to meet with the mayor on behalf of the Association of the Employees of the Commonwealth, but the mayor could not see him. (*Id.* at p. 42.) The mayor never met with the plaintiffs.

As Deida–Martinez and Arenas–Rodriguez asserted, an undefined number of letters were sent by a group that became the plaintiffs to municipal officials. One letter was signed for by the mayor's secretary (Docket No. 80, Ex. C, p. 35). The others went to the human resources office. (*Id.*) In addition to sending letters, some of the plaintiffs mentioned their dispute with Soto–Morales on a radio show (Docket No. 80, Ex. C, p. 67). The mayor responded publicly by stating that the employees who came in with the past administration were "rude" and "had bad manners" (Docket No. 80, Ex. C, p. 67).

#### D.  Alex Torres Guzman

Although the complaint states that Alex Torres–Guzman is a Rescue Technician

passed Morales–Colon's house because the vehicle's windows are darkly tinted. (Docket

(Docket No. 2, p. 10), the record at summary judgment reveals that he is in fact a Shelter Officer (Docket No. 60–8, p. 4). He worked under the prior administration and he is affiliated with the PDP. Torres–Guzman alleges only two forms of adverse employment actions were taken against him.

First, Torres–Guzman claims that in or around September 2005 he was stripped of all the equipment necessary to carry out search and rescue assignments. The record at summary judgment shows that Torres–Guzman was not assigned equipment as a shelter officer (Docket No. 60–8, p. 20). He was often treated as a rescue worker, however, and prior to Soto–Morales's change of policy, he was allowed to have rescue equipment when he was acting as a rescue worker. (*Id.*) Torres–Guzman explained that if there was no emergency, then his sole duties as a shelter officer were to check shelters once a year and to take cots to the shelters. (*Id.* at p. 21.)

Second, Torres–Guzman alleges that he was stripped of his job functions, not allowed to attend any rescue emergencies, and assigned to tasks unrelated to his job. Plaintiff alleges that his proper tasks were covered by volunteer personnel. At summary judgment, no evidence has been submitted regarding this claim.

Torres–Guzman is not actively political and he has made no claim that Soto–Morales or Soto–Santiago know that he is affiliated with the PDP. He claims, however, that Soto–Morales has told him that he does not trust people from the prior administration and that if it were up to him then no one from the prior administration would be there because he has fifty-two volunteers in whom he trusts (Docket No. 60–9, p. 55.)

60–8, p. 34). In his deposition testimony, Torres–Guzman referenced the same letters and radio show referenced by some of the other plaintiffs as efforts that were made by the plaintiffs to inform the mayor of the plaintiffs' dispute with Soto–Morales (Docket Nos. 60–8, pp. 37–38; 80, Ex. E, p. 51).

### III. Summary Judgment Standard

The Court's discretion to grant summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. The Rule states, in pertinent part, that the court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Santiago–Ramos v. Centennial P.R. Wireless Corp.,* 217 F.3d 46, 52 (1st Cir.2000). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once a properly supported motion has been presented, the opposing party has the burden of demonstrating that a trial-worthy issue exists that would warrant the court's denial of the motion for summary judgment. For issues where the opposing party bears the ultimate burden of proof, that party cannot merely rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute. *See Suarez v. Pueblo Int'l, Inc.,* 229 F.3d 49, 53 (1st Cir.2000).

■ In order for a factual controversy to prevent summary judgment, the contested facts must be "material" and the dispute must be "genuine." Material

means that a contested fact has the potential to change the outcome of the suit under governing law. The issue is genuine when a reasonable jury could return a verdict for the nonmoving party based on the evidence. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It is well settled that "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment. *Id.* at 252, 106 S.Ct. 2505. It is therefore necessary that "a party opposing summary judgment must present definite, competent evidence to rebut the motion." *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 581 (1st Cir.1994).

In making this assessment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir.1990). The court may safely ignore, however, "conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Muñoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990).

### IV. Discussion

#### A. Political Discrimination

■ The First Amendment rights to freedom of speech and association provide non-policy making public employees with protection from adverse employment decisions based upon their political affiliation. *Padilla–Garcia v. Guillermo Rodriguez,* 212 F.3d 69, 74 (1st Cir.2000); *see also Rutan v. Republican Party,* 497 U.S. 62, 75, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990); *Branti v. Finkel,* 445 U.S. 507, 516, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *Elrod v. Burns,* 427 U.S. 347, 354, 96 S.Ct. 2673, 49

L.Ed.2d 547 (1976). The *Mount Healthy* two-part burden shifting framework is used to evaluate claims of political discrimination. *Padilla–Garcia*, 212 F.3d at 74; *c.f.*, *Mount Healthy City Sch. Dist. Bd. Of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) (applying the two-part burden shifting analysis to a free speech claim). A plaintiff alleging political discrimination bears a threshold burden of producing sufficient evidence, whether direct or circumstantial, that he or she engaged in constitutionally protected conduct and that political affiliation was a substantial or motivating factor behind the challenged employment action. *Gonzalez–DeBlasini v. Family Dept.*, 377 F.3d 81, 85 (1st Cir.2004); *Rodriguez–Rios v. Cordero*, 138 F.3d 22, 24 (1st Cir.1998). The plaintiff must point to evidence in "the record which, if credited, would permit a rational fact finder to conclude that the challenged personnel action occurred and stemmed from a politically based discriminatory animus." *Gonzalez–DeBlasini*, 377 F.3d at 85 (*quoting LaRou v. Ridlon*, 98 F.3d 659, 661 (1st Cir.1996) (*quoting Rivera–Cotto v. Rivera*, 38 F.3d 611, 614 (1st Cir.1994))).

█ To establish a *prima facie* case the plaintiff must show that (1) the plaintiff and the defendant belong to opposing political affiliations; (2) the defendant has knowledge of the plaintiff's affiliation; (3) a challenged employment action occurred; and (4) political affiliation was a substantial or motivating factor behind the challenged employment action. *Martinez–Velez v. Rey–Hernandez*, 506 F.3d 32, 39 (1st Cir.2007); *Peguero–Moronta v. Santiago*, 464 F.3d 29, 48 (1st Cir.2006). The burden then shifts to the defendant, who must articulate a nondiscriminatory basis for the

adverse employment action and establish by a preponderance of the evidence that he would have taken the same employment action regardless of the plaintiff's political affiliation. *Padilla–Garcia*, 212 F.3d at 74; *Rodriguez–Rios*, 138 F.3d at 24. The shifting burden, known as the *Mt. Healthy* defense, "ensures that a plaintiff-employee who would have been dismissed in any event on legitimate grounds is not placed in a better position merely by virtue of the exercise of a constitutional right irrelevant to the adverse employment action." *Acevedo–Diaz v. Aponte*, 1 F.3d 62, 66 (1st Cir.1993) (citations omitted). The evidence by which the plaintiff established a *prima facie* case may suffice for a factfinder to infer that the defendant's proffered nondiscriminatory ground for the adverse employment action is pretextual, and "check" summary judgment.[3] *Padilla–Garcia*, 212 F.3d at 78.

█ Evidence of a highly charged political environment coupled with the parties' competing political persuasions may be sufficient to show discriminatory animus, especially where a plaintiff was a conspicuous target for political discrimination. *Rodriguez–Rios*, 138 F.3d at 24; *see also Padilla–Garcia*, 212 F.3d at 75–76 (upholding a denial of summary judgment where evidence showed that defendants knew of plaintiff's party affiliation, plaintiff was a conspicuous party member and witnesses testified as to defendant's desire to humiliate plaintiff). Evidence that a plaintiff held a trust position under a previous administration of opposing political affiliation, and that plaintiff is a well-known supporter of a different political party, however, may not suffice to show that a challenged employment action was prem-

**3.** In this way, a First Amendment political discrimination claim differs from a Title VII claim, where a plaintiff is required to come forward with affirmative evidence that defendant's nondiscriminatory reason for the employment action is pretextual. *Padilla–Garcia*, 212 F.3d at 77–78.

ised upon political affiliation. *Gonzalez–De–Blasini,* 377 F.3d at 85–86; *see also Cosme–Rosado v. Serrano–Rodriguez,* 360 F.3d 42, 48 (1st Cir.2004) (upholding a grant of summary judgment where the mayor "voiced his intention to rid the town of NPP activists"). Additionally, mere temporal proximity between an adverse employment action and a change of administration is insufficient to establish discriminatory animus. *Acevedo–Diaz,* 1 F.3d at 69.

■ Where, as here, the challenged employment actions fall short of discharge, what has come to be known as political harassment, the plaintiff must show, *by clear and convincing evidence,* that he was subjected to an unreasonably inferior work environment when compared to the norm for the position. *Agosto–de–Feliciano v. Aponte–Roque,* 889 F.2d 1209, 1218 (1st Cir.1989); *see Bisbal–Ramos v. City of Mayagüez,* 467 F.3d 16, 22 (1st Cir.2006) (affirming the continuing validity of the degree of mistreatment standard in light of *Rutan* ). The change must be of a "magnitude that would 'cause reasonably hardy individuals to compromise their political beliefs and associations in favor of the prevailing party.'" *Bisbal–Ramos,* 467 F.3d at 22 (citing *Agosto–de–Feliciano,* 889 F.2d at 1217). "In general, an employee must show a permanent, or at least sustained, worsening of conditions to reach the threshold of constitutional injury. If, however, a temporary change in duties is so inappropriate as to be demeaning and persists for longer than a week or two, the severity threshold might be met." *Agosto–de–Feliciano,* 889 F.2d at 1219.

### 1. Deida–Martinez and Arenas–Rodriguez

■ Defendants argue that plaintiffs Deida–Martinez and Arenas–Rodriguez fail to state a *prima facie* case of political

discrimination because they share the same political affiliation as defendants Soto–Santiago and Soto–Morales. The Court agrees.

As stated above, to make a *prima facie* showing of political discrimination, plaintiffs must demonstrate that they belong to a different political party than the defendants. *Martinez–Velez,* 506 F.3d at 39. Both Deida–Martinez and Arenas–Rodriguez stated in their depositions that they belong to the NPP, the same political party to which defendants Soto–Santiago and Soto–Morales belong. Deida–Martinez even states that the defendants know he is a member of their same party. Thus, plaintiffs fail to meet one of the elements necessary for stating a *prima facie* showing.

■ In *Padilla–Garcia,* the First Circuit Court of Appeals recognized an exception to the *prima facie* requirement that plaintiffs and defendants pertain to different political parties where a plaintiff is affiliated with a different faction within the same party as the defendant. 212 F.3d at 75–76. In that case the plaintiff was a well known member of the administration of an incumbent mayor for whom she campaigned in a primary election. *Id.* at 75. Not only was the plaintiff affiliated with a rival faction but she was clearly identified as a close ally of the former mayor. *Id.* at 76. In analyzing the facts of *Padilla–Garcia,* the First Circuit Court of Appeals noted that "[i]n a different context, merely producing evidence of affiliation with a political faction might not be sufficient to withstand summary judgment." *Id.* at 75. Deida–Martinez and Arenas–Rodriguez have not even alleged (let alone demonstrated) that they belong to a different faction within the NPP than do Soto–Santiago and Soto–Morales. They have also not alleged or shown that they are conspicuous targets for discrimi-

nation by nature of having a prominent role with a group whose political beliefs differs from the governing administration in Arecibo. In other words, plaintiffs claim does not fit within the framework of the intra party political discrimination claim developed in *Padilla–Garcia*.[4]

Plaintiffs' claim also does not fit within the policy framework of a political discrimination claim. Plaintiffs pertaining to a different faction within the same party as the defendant may bring a political discrimination claim because different political philosophies may be at stake. *Padilla–Garcia*, 212 F.3d at 76. Deida–Martinez and Arenas–Rodriguez have not stated in the record that they have a different political philosophy than the defendants. Neither party has directed this Court's attention to controlling or even persuasive precedent from other courts in which a court has upheld a plaintiff's claim in a factually and legally analogous context. Nor has this Court found any such authority during its own research. Therefore, Deida–Martinez and Arenas–Rodriguez First Amendment claims of political discrimination are dismissed with prejudice.

### 2. Alex Torres Guzman

█ Plaintiff Torres–Guzman's deposition testimony does not match the allegations in the complaint that pertain to him. Torres–Guzman claimed to be a rescue technician. The summary judgment record reveals, however, that his title is actually Shelter Officer. This discrepancy is significant. As a shelter officer, Torres–Guzman is required to check the shelters once a year and to take cots to the shelters. Torres–Guzman did not provide any proof in the summary judgment record, nor even allege, that his duties as a shelter officer have been curtailed by Soto–Morales. There is no evidence provided by the other plaintiffs that supports Torres–Guzman's claim on this issue either. The proof in the summary judgment record provided by plaintiffs Juarbe–Velez and Morales–Colon, both of whom actually are Rescue Technicians, is that for a time they were assigned to work at a desk and operate a radio at that desk. Even if this were true for Torres–Guzman, a temporary assignment to cover a desk would not have interfered with his shelter officer duties outside of an emergency requiring the use of a shelter. No such emergency appears in the summary judgment record.

Other than alleging that he was stripped of job functions as an emergency technician, the only other adverse employment action alleged by Torres–Guzman is that he was stripped of rescue equipment. In his deposition testimony, Torres–Guzman explained that he was often treated as a rescue technician, although he was not one, and that he had been allowed to keep certain rescue equipment prior to Soto–Morales's change of policy. Even assuming *arguendo* that the reclamation of the rescue equipment constituted a deprivation of constitutional proportions for a rescue technician, this does not aid Torres–Guzman in his political discrimination claim because he was not a rescue technician. Torres–Guzman took on duties that were not his own that involved the use of rescue

---

4. Neither does it fit within the specific contours of a political harassment claim. To satisfy the political harassment standard, a government employer's actions must be "sufficiently severe to cause reasonably hardy individuals to compromise their political beliefs and associations in favor of the prevailing party." *Agosto–de–Feliciano*, 889 F.2d at

1217. Here, of course, the political beliefs of Deida–Martinez and Arenas–Rodriguez are one and the same as those of the defendants. They do not allege or show that they have compromised their political beliefs due to the defendants' actions. Both plaintiffs remain affiliated with the NPP.

equipment prior to the arrival of Soto–Morales as director. If Soto–Morales then made Torres–Guzman request rescue equipment from a central depository when needed, his duties as a Shelter Officer were not affected. Accordingly, upon the record at summary judgment, Torres–Guzman has not stated a *prima facie* case of political harassment because he has not shown that he was subjected to unreasonably inferior work environment when compared to the norm for a Shelter Officer.[5]

### 3. Daniel Juarbe–Velez and Juan Morales–Colon

Defendants, in their Local Rule 56 statement of facts, dispute whether plaintiffs Juarbe–Velez and Morales–Colon were able to satisfy any element of a political discrimination claim. Therefore, the Court shall review these two plaintiffs' claims element by element.

■ Plaintiffs Juarbe–Velez and Morales–Colon alleged four ways in which they suffered adverse employment actions at the hands of Soto–Morales: (1) they were stripped of the rappelling equipment used in rescue operations; (2) they were assigned to work as desk officers and not allowed to leave on rescue emergencies; (3) they were prevented from attending trainings; and (4) they were unfairly issued negative memoranda regarding their performance at work. At summary judgment, plaintiffs' third claim, that they were prevented from attending training, was not born out. The record shows that they were only not allowed to attend a single "academy" which offered courses they al-ready had previously attended, with the exception of one course on how to cut people out of a hybrid vehicle. Otherwise, plaintiffs were allowed to attend seminars to stay up to date with information in their field. Plaintiffs first claim of adverse employment action is the kind of minor irritant that does not create a work situation unreasonably inferior to the norm for a Rescue Technician. *Agosto–de–Feliciano*, 889 F.2d at 1219 ("An employee who has lost merely the 'perks' of his position ... would not meet the 'unreasonably inferior' standard."). Plaintiffs fourth claim, the issuance of negative memoranda, is also relatively minor because (outside of the memoranda directed only against Juarbe–Velez) the disciplinary measure of the issuance of a memorandum was based upon the plaintiffs' lack of compliance with an internal rule: a time reporting requirement.

Both plaintiffs' second claim regarding an adverse employment action, however, is more weighty. In the complaint, these plaintiffs allege that they were reassigned from their rescue technician jobs to work as radio operators and that they were prevented from going out on rescue emergencies while their duties were covered by volunteers. At summary judgment, it appears that even as rescue technicians under the previous (PDP) administration the plaintiffs were required to act sometimes as desk officers and operate the radio. If emergencies occurred, however, they went out in teams of two to attend to the emergency. Under Soto–Morales, the worker

---

5. Parts of Torres–Guzman's deposition at summary judgment included allegations of other forms of minimal adverse employment actions, such as receiving a reprimand letter for not using a time clock (Docket Nos. 60–8, p. 32; 80, Ex. E, p. 33), and initially receiving problematic work schedules that were later remedied (Docket No. 60–8, pp. 19–20). These claims were not included, nor alluded to, in plaintiffs' portion of the complaint and for this reason they have not been discussed above. Even if they had been included, these claims of adverse employment actions would not rise to the level of creating an unreasonably inferior work environment when compared to the norm for a Shelter Officer. *See Agosto–de–Feliciano*, 889 F.2d at 1217–19.

assigned to the desk was required to stay at the desk and not attend to the emergency. Although the record shows that the plaintiffs are no longer required to work as desk officers, it is unclear as to how long plaintiffs' reassignment to the desk lasted.

█ Under *Agosto–de–Feliciano*, reassigning an employee to tasks below his or her rank permanently, or to duties so inappropriate as to be demeaning for more than a week may reach the threshold of the unreasonably inferior standard. 889 F.2d at 1219. On the record before the Court, it is unclear to what extent the reassignment of duties was inferior to the normal duties of a rescue technician. Nonetheless, preventing a rescue technician from attending to rescue situations appears to be a significant change in role. It is also unclear how long the reassignment lasted, but it may have been for one to two years given the date of Soto–Morales's appointment and the date of the depositions that make up the record. Thus, drawing all inferences in favor of the plaintiffs, as the Court must at summary judgment, the Court holds that Juarbe–Velez and Morales–Colon have met the unreasonably inferior standard.

The inquiry does not end there, however, because the defendants argue that they did not know the plaintiffs' political affiliation and that the plaintiffs' political affiliation was not a substantial or motivating factor behind the adverse employment actions alleged by plaintiffs. At summary judgment, plaintiffs have provided a surplus of testimony that their director, Soto–Morales, knew their political affiliation with the PDP. First, Juarbe–Velez alone testified as to three conversations that he had with Soto–Morales in which Soto–Morales identified him as affiliated with the PDP. Second, Morales–Colon testified as to his prominent role as a PDP activist in Arecibo. Third, not only Soto–Morales

and Juarbe–Velez, but all of the plaintiffs testified that letters had been written concerning their dispute with Soto–Morales. Some of those letters were given directly to Soto–Morales. Fourth, plaintiff Torres–Guzman testified that Soto–Morales told him that he does not trust people from the prior administration and that he would remove them if it were up to him because he has fifty two volunteers in whom he trusts.

█ At summary judgment, the Court finds sufficient evidence in the record to indicate not only that Soto–Morales was aware of the political affiliation of Juarbe–Velez and Morales–Colon, but that their political affiliation was a motivating factor in the adverse employment actions at issue in this case. There is direct evidence of Soto–Morales's antipathy towards PDP members in the statements he made to Juarbe–Velez. There is also strong circumstantial evidence that Soto–Morales was substantially motivated by the plaintiff's political affiliation. According to the allegations, Soto–Morales held back the plaintiffs from attending rescue emergencies while allowing volunteers, mainly made up of NPP members, to attend the rescue emergencies. There is no explanation in the record why Soto–Morales held back the employees from attending to their principal duties, while allowing volunteers mainly made up of NPP members to attend in their stead. The strong inference that arises is that the plaintiffs were held back based upon their political affiliation. Plaintiffs also claimed that they were subject to disciplinary memoranda that were not issued to members of Soto–Morales's group, made up of only NPP members, even though Soto–Morales's group also ran afoul of the same internal rules as the plaintiffs. Again, the inference is that the adverse employment ac-

tion was based upon party affiliation.[6] The circumstantial evidence is further supported by Torres–Guzman's testimony that Soto–Morales did not trust people from the prior administration.

▆▆▆ There is no such plentitude of evidence, however, tending to show that Mayor Soto–Santiago was aware of the political affiliation of Juarbe–Velez and Morales–Colon,[7] and, more importantly, there is not any evidence that the adverse employment actions involved the mayor. All of the acts alleged were done by Soto–Morales. Plaintiffs have not provided evidence that they were done at the behest of the mayor. Without the mayor's involvement in the acts, he cannot be found liable. Section 1983 does not provide for pure supervisory liability. *Martinez–Velez,* 506 F.3d at 41 (citing *Rizzo v. Goode,* 423 U.S. 362, 375–77, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976)). "[O]nly persons who were directly involved in the wrongdoing may be held liable." *Id.* (*quoting Kostka v. Hogg,* 560 F.2d 37, 39 (1st Cir.1977)). While exceptions to this rule exist for supervisory encouragement, condonation, acquiescence or gross negligence amounting to deliberate indifference of a subordinate's constitutionally improper conduct, *Lipsett v. Univ. of Puerto Rico,* 864 F.2d 881, 902 (1st Cir.1988), none of the exceptions were invoked (or are relevant) here.

Thus, the Court finds that Juarbe–Velez and Morales–Colon have stated a *prima facie* case of political discrimination against Soto–Morales, but not against Mayor Soto–Santiago. Defendants argued that they would have taken the same decisions regarding plaintiffs adverse employment actions even if they were found to have a discriminatory animus (the "*Mount Healthy* defense"). Nonetheless, defendants did not support their *Mount Healthy* defense by providing any nondiscriminatory justifications for the adverse employment actions taken against the plaintiffs, principally the reassignment of the plaintiffs to work as desk officers. Without advancing a nondiscriminatory reason for the adverse employment actions, the *Mount Healthy* defense fails at this point. Accordingly, the First Amendment claims of Juarbe–Velez and Morales Colon against Mayor Soto–Santiago are dismissed with prejudice. Their claims against Soto–Morales remain.

6. A third form of circumstantial evidence indicating that the adverse employment actions were substantially premised upon these plaintiffs' political affiliation is that some Emergency Management Office workers were allowed to keep their rescue equipment, while those from the previous administration were not. Notably, the plaintiffs did not provide uniform testimony on this claim in their deposition testimony submitted at summary judgment.

7. None of the plaintiffs claimed that they had a conversation or some other interaction with the mayor in which they told the mayor their political affiliation. While one letter sent by the plaintiffs was signed for by the mayor's secretary, there is no indication in the record as to exactly what information the letter contained or that the mayor read it. Neither is there any evidence that the other letters provided to the human resources office and to Soto–Morales came to the mayor's attention. To the contrary, the mayor submitted a sworn statement that he did not know the political party affiliation of any plaintiff (Docket No. 60–2, ¶¶ 5–6). The sole non-conclusory allegation in the record supported by particular facts that the mayor knew the political affiliation of any plaintiffs is the deposition testimony of Juarbe–Velez that he was told by Soto–Morales that the mayor thought it was bad for the image of the administration that Juarbe–Velez appeared in a newspaper photo rescuing "an old lady" because he is affiliated with the PDP. While this statement is evidence that the mayor knows the political affiliation of Juarbe–Velez, without more, it does not show that the mayor was involved in the adverse employment actions taken by Soto–Morales.

### 4. Municipal Liability

For a municipal government to be liable for injuries inflicted by its employees pursuant to section 1983, the employee must have been executing official government policy or custom as expressed by lawmakers or "those whose edicts or acts may fairly be said to represent official policy." *Monell v. Dep't of Social Services of City of New York,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Plaintiffs fail even to allege that the adverse employment actions they suffered under their supervisor Soto–Morales were part of an official government policy or custom. Instead, they plead that there was not a policy in place to prevent civil rights violations (Docket No. 2, p. 2). This is patently insufficient under *Monell.* Plaintiffs also failed to adduce evidence to the summary judgment record that the adverse employment actions taken against them were part of an official policy or custom, rather than personnel decisions taken by Soto–Morales. Accordingly, all plaintiffs claims against the Municipality of Arecibo are dismissed with prejudice.

### B. Qualified Immunity

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The First Circuit Court of Appeals employs a three-part test when determining if a public official is entitled to qualified immunity: "(1) whether plaintiff's allegations, if true, establish a constitutional violation; (2) whether that right was clearly established at the time of the alleged violation; and (3) whether a similarly situated reasonable official would have understood that the challenged action violated the constitutional right at issue." *Mihos v. Swift,* 358 F.3d 91, 102 (1st Cir.2004) (citing *Suboh v. District Attorney's Office of Suffolk Dist.,* 298 F.3d 81, 90 (1st Cir.2002) and *Harlow,* 457 U.S. at 818–819, 102 S.Ct. 2727).

### 1. Whether the Constitutional right was clearly established

"A right is 'clearly established' if, at the time of the alleged violation, '[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Brown v. Hot, Sexy and Safer Productions, Inc.,* 68 F.3d 525, 531 (1st Cir.1995) (*quoting Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

### 2. Whether a reasonable official would have understood that the challenged action violated the Constitutional right at issue

"[T]he relevant question is whether a reasonable official could have believed his actions were lawful in light of clearly established law and the information the official possessed at the time of his allegedly unlawful conduct." *Singer v. Maine,* 49 F.3d 837, 844 (1st Cir.1995) (citations omitted). "This objectively reasonable inquiry is highly fact specific ... and in the context of qualified immunity, summary judgment is precluded when disputed material facts make pre-trial solution impossible." *Tejada Batista v. Fuentes Agostini,* 247 F.Supp.2d 73, 76 (D.P.R.2003) (citing *Swain v. Spinney,* 117 F.3d 1, 9–10 (1st Cir.1997); *Kelley v. LaForce,* 288 F.3d 1, 7 (1st Cir.2002)). Because there is a dispute as to Soto–Morales's motivation in undertaking the challenged adverse employment actions, the question of whether Soto–Morales is

eligible for qualified immunity must go to the jury.

### C. Due Process and Equal Protection

At various points in the complaint the plaintiffs may have attempted to raise equal protection and due process claims. If these claims were raised, then they are now dismissed for three distinct and equally valid reasons.

■ First, plaintiffs did not make any credible attempt at developing these claims in the record. The only reference in the plaintiffs' opposition to summary judgment occurred in a single sentence where the plaintiffs appeared to conflate equal protection with due process. Therefore, plaintiffs' due process and equal protection claims are waived for failure to develop the claims. *See U.S. v. Zannino,* 895 F.2d 1, 17 (1st Cir.1990) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."); *Rodriguez–Guzman v. Garcia,* 901 F.Supp. 45, 49–50 (D.P.R.1995).

Second, plaintiffs failed to oppose the sections of the defendants' Local Rule 56 statement of facts in which they listed facts defeating plaintiffs' due process and equal protection claims. The Court may therefore accept defendants' facts concerning equal protection and due process in their entirety, defeating the factual basis for plaintiffs' claims. *See* L.Civ.R. 56.

■ Third, plaintiffs' equal protection and due process claims fail on the merits. *See Pagan v. Calderon,* 448 F.3d 16, 36–37 (1st Cir.2006) ("so long as [plaintiff's] allegations of political discrimination fit within the contours of the First Amendment, they are, a fortiori, insufficient to ground a claim that the politically-inspired misconduct violated equal protection guar-

antees."); *Gonzalez Pina v. Rodriguez,* 278 F.Supp.2d 195, 206 (D.P.R.2003) ("An employee who has not been terminated has not lost a property interest and therefore cannot claim a violation of his due process rights."), *aff'd by* 407 F.3d 425 (1st Cir. 2005).

For all three reasons outlined in this section, all plaintiffs' equal protection and due process claims are dismissed with prejudice.

### V. Conclusion

For the reasons stated above, defendants' motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**. The federal claims of plaintiffs Deida–Martinez, Arenas–Rodriguez and Torres–Guzman against all defendants are dismissed with prejudice. The supplemental state law claims of plaintiffs Deida–Martinez, Arenas–Rodriguez and Torres–Guzman against all defendants are dismissed without prejudice. The federal claims of plaintiffs Juarbe–Velez and Morales–Colon against Mayor Soto–Santiago and the Municipality of Arecibo are dismissed with prejudice. The supplemental state law claims of plaintiffs Juarbe–Velez and Morales–Colon against Mayor Soto–Santiago and the Municipality of Arecibo are dismissed without prejudice.

The only claims remaining are the federal and supplemental state law claims of plaintiffs Juarbe–Velez and Morales–Colon against defendant Soto–Morales.

**IT IS SO ORDERED.**